## Staunton

### R. E. Neblett, Administrator of the Estate of Helen G. Neblett, Deceased v. Charles G. Hunter, Jr.

September 9, 1966.

Record No. 6236.

Present, All the Justices.

*Stanley E. Sacks* (*Sacks, Sacks and Kendall*, on brief), for the plaintiff in error.

*Robert M. Furniss, Jr.* (*Furniss and Davis*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by R. E. Neblett, administrator of the estate of Helen G. Neblett, deceased, hereinafter referred to as plaintiff, against Charles G. Hunter, Jr., by motion for judgment, seeking recovery of damages for the death of Mrs. Neblett, alleged to have resulted by reason of the negligence of the defendant. In his answer and grounds of defense, the defendant denied negligence, and asserted that the death of Mrs. Neblett was occasioned by her contributory negligence. The case was tried before a jury, which returned a verdict in favor of defendant. Plaintiff's motion to set aside the verdict was overruled, and plaintiff thereafter obtained this writ of error.

In his brief, plaintiff argued that "the essence" of his case is that defendant "negligently attempted to move his vehicle from one lane of traffic to another, without first ascertaining that it was safe to do so, and without the requisite statutory signal." He has made numerous assignments of error; but we deem it necessary to discuss only those which relate to the admissibility of certain evidence and to the granting of two instructions. The evidence will, therefore, not be recited in detail; but only so much as is pertinent to the above two questions.

The accident occurred on September 4, 1964, at approximately 7:00 p. m., on U. S. Route 58, known as Virginia Beach Boulevard. Route 58 is a four-lane highway, running generally east and west, with two eastbound lanes separated from two westbound lanes by a grass median. At the scene of the accident, located in a residential district, the road is straight and level and its surface free of defects. The weather was clear, the sun was shining, the roadway was dry, and the posted speed limit was 55 miles per hour.

The evidence as to how the accident happened is in sharp conflict; but since the jury found for the defendant, it will be stated generally in his favor.

Mrs. Neblett, 43 years old, was driving a small compact car, a Renault, and Hunter, 19 years of age, was driving a Chevrolet,

and each was proceeding eastwardly towards Virginia Beach. Mrs. Neblett was driving at a speed of 50 to 55 miles per hour and was accompanied by her 14-year-old son, John S. Neblett. Hunter was traveling alone. Mrs. Neblett had been in the left or inner lane at a traffic light about 1 mile before reaching the point of the accident.

Defendant's witnesses testified that after Mrs. Neblett left the traffic light, and had passed the car of Frank Peters in the right lane, she moved into that lane. Hunter continued in the left lane, and passed the car of Mrs. Neblett. When the Hunter car was a short distance ahead of Mrs. Neblett's car, he moved a foot or two into the right lane. Mrs. Neblett blew her horn and Hunter returned to the left lane. Mrs. Neblett proceeded in the right lane, again blew her horn, and applied her brakes three or four times; and as her car came alongside and abreast of Hunter's car, her car began to swerve from side to side, went out of control, ran off the road, and struck a telephone pole. Neither car came in contact with the other.

Mrs. Neblett received serious injuries, and upon her arrival at a hospital at 7:48 p. m. of the same day was pronounced dead.

Young Neblett testified that his mother, before leaving their home, about 45 minutes prior to the accident, had consumed a portion of some alcoholic beverage. However, he said that she appeared normal at all times thereafter.

Frank Peters, called as an adverse witness by the plaintiff, testified that he was driving his car eastwardly in the right or outside lane immediately behind the car of Mrs. Neblett, when the accident occurred. His version of the accident was favorable to the defendant. During his examination, he was asked by plaintiff's counsel what he "did about Mr. Hunter at that time?" Upon objection, the jury was excused from the courtroom, and the interrogation of Peters was continued in its absence. Peters denied that, at the scene of the accident, he took Hunter by the arm and led him to a police officer, or that he told the officer that if he didn't take Hunter into custody, he (Peters) was going to take him, or that Hunter had tried to run him off the road just before the accident. Warned that plaintiff expected to contradict him by another witness, Peters repeated his denials. The court refused to allow this testimony of Peters to go to the jury. The plaintiff excepted.

Subsequently, Mrs. Ruth Trotman, called as a witness by plaintiff, testified, in the absence of the jury, that she did not see the accident; but traveling westerly on Virginia Beach Boulevard, she arrived at the scene of the accident just after it occurred. She said she stopped her automobile, and with her young son went to the immediate scene; saw Frank Peters holding Hunter by the arm, leading him to the police officer; Peters told the officer that if he did not take the defendant in custody, he (Peters) would because the defendant was trying to leave the scene; and said that Hunter had tried to run him off the road just before the accident.

Plaintiff urged that the testimony of Mrs. Trotman be admitted for the purpose of impeaching the witness, Peters. He excepted to the action of the court in excluding it from the jury.

Plaintiff also assigns error to the refusal of the court to allow Police Officer David A. Wallace to testify whether any statements were made to him by Peters in the presence of Hunter, for the purpose of contradicting Peters. Wallace was the first witness examined, and no foundation had been laid at the time of his examination for the contradition. Neither Peters nor Hunter had then testified. The testimony objected to was properly refused.

■ Robert A. Morton, a doctor of medicine and a Medical Examiner for the State of Virginia, testified that, in the course of his duties, he examined the body of Mrs. Neblett about 9:50 p. m. on the evening of the accident; that he drew a sample of her blood at that time; put the sample in an approved container, a tube furnished him by the Chief Medical Examiner's Office; corked the tube and filled out the label on it with the name of the decedent, the date and time of drawing the blood; and signed his name thereto as the person who drew the blood. He kept the tube overnight in his office and on the next morning personally placed it on the desk of Ramon A. Morano, State Toxicologist, for an analysis by the latter of the alcoholic content of the blood in the tube.

Morano, who qualified as an expert witness, testified that he had run at least 25,000 blood-alcohol tests; that he made a test of the blood in the tube left in his office by Dr. Morton; and found that the blood contained 0.18% alcohol. In making the test and analysis he said he followed standard and accepted procedure therefor. He testified in detail as to the effect of specific quantities of alcohol upon an individual's ability to respond to a situation confronting him. In answer to the question, what is the "effect upon a per-

son's ability to react, to judge distances, at what point does the alcoholic content—what are the limits within which that would affect the individual's ability?" He replied: "Well, I would say that levels of a point 0 five, most persons respond favorably, and levels within one 0 and point one five that they would begin to show some diminution in these faculties."

No certificate of the blood-alcohol test was offered in evidence. Cf. *Brooks, Adm'r v. Hufham*, 200 Va. 488, 493, 106 S. E. 2d 631; *Russell, Adm'x v. Hammond*, 200 Va. 600, 604, 106 S. E. 2d 626; *Wade v. Commonwealth*, 202 Va. 117, 121, 122, 116 S. E. 2d 99; and *Laughlin v. Rose, Adm'x*, 200 Va. 127, 131, 104 S. E. 2d 782.

Plaintiff objected both to the admission of the evidence "that a blood-alcohol test had been performed upon the decedent, Helen G. Neblett," and to the result thereof. His contention was based principally on the ground that the blood sample tested by Morano had not been identified as the blood of Mrs. Neblett.

In *Lakeside Inn v. Commonwealth*, 134 Va. 696, 701, 114 S. E. 769, we said: "The law * * *, in a proper case, requisitions the expert in every field of human knowledge to assist in arriving at just conclusions."

In 7 Mich. Jur., Evidence, § 170, pages 538 and 539, the general rule is well stated:

"When the question involved does not lie within the range of common experience or common knowledge, but requires special experience or special knowledge, then the opinions of witnesses skilled in the particular science, art, or trade to which the question relates are admissible in evidence. The general rule is that the opinions of experts or skilled witnesses are admissible in evidence in those cases in which the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject matter so far partakes of the nature of a science, art or trade as to require a previous habit of experience or study in it to acquire a knowledge thereof. An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when his

knowledge of the matter in relation to which his opinion is asked is such, or is so great, that it will probably aid the trier in the search for the truth. Whenever the facts stated, as well as knowledge of the facts themselves, depend on professional or scientific knowledge or skill not within the range of ordinary training or intelligence, conclusions may be testified to by an ordinary expert."

See also 159 A. L. R., beginning at page 224, Annotation: "Admissibility and weight of evidence based on scientific test for intoxication or presence of alcohol in system," and Vol. 9C, Blashfield's Cyclopedia of Automobile Law and Practice, §§ 6185 and 6186, and cases cited.

We find no error in the admission of the evidence that a blood test had been performed and the result thereof. Code of Virginia, 1950, §§ 19.1-39, 19.1-41, 19.1-43, Repl. Vol. 1960, and § 19.1-42, Cum. Supp. 1960; cf. *Schmerber* v. *California*, 384 U.S. 757, 16 L. ed. 2d 908, 86 S. Ct. 1826. The sample of blood analyzed by the State Toxicologist was sufficiently identified as that of the blood of Mrs. Neblett. The result of the test was adequately established, and was admissible in connection with the expert opinion of Morano as to the effect of alcohol upon the faculties of a person.

We now come to the question of the admissibility of the evidence of Peters and Mrs. Trotman offered for the purpose of impeaching the credibility of the witness, Peters.

It is generally held in Virginia and elsewhere that, after a proper foundation has been laid, the credibility of a witness may be impeached by proof of statements made by him on some prior occasion, inconsistent with or contradictory of the evidence he has given on the trial. The prior inconsistent statements, however, may be given in evidence only to impeach the credibility and not as evidence on any fact touching the issue to be tried. *Thornton* v. *Downes*, 177 Va. 451, 459, 14 S. E. 2d 345; 20 Mich. Jur., Witnesses, § 56, pages 507-8; 58 Am. Jur., Witnesses, § 767, page 417. Cf. *Luhring* v. *Carter*, 193 Va. 529, 538, 69 S. E. 2d 416.

The record discloses that Peters was told that there was a witness who claimed to have overheard him make statements inconsistent with, and contradictory of, his testimony. He was questioned as to those statements, and given an opportunity to affirm or deny them. He denied them repeatedly.

The plaintiff, having laid the foundation for impeaching the credibility of Peters, should have been allowed to introduce be-

fore the jury the latter's testimony as to whether he had on a prior occasion made statements inconsistent with the evidence given by him on the trial. For like reason, the court erred in refusing to admit the testimony of Mrs. Trotman for the limited purpose of impeaching the same witness.

In his notice of appeal plaintiff assigned error to the granting of Instructions numbered 12 and 13. He made no objection or exception to Instruction Number 12 in the court below, and has abandoned the assignment of error thereto in the oral argument before us.

Instruction Number 13 reads as follows:

"The Court instructs the jury that if you find that the Neblett car passed or was passing the defendant's car on the right, then the decedent, Mrs. Neblett, was negligent."

Plaintiff objected and excepted to this instruction on the ground that there was no evidence upon which it could be based. We do not agree. In the statement of facts heretofore recited, there was testimony that plaintiff's decedent was in the act of passing defendant's car at the time of the accident. However, since there must be a new trial of the case, we point out that the instruction is not a correct statement of the law. It is permissible for one vehicle to pass another on the right, under conditions set forth in § 46.1-210, Code of Virginia, 1950, Repl. Vol. 1958, which reads as follows:

"*When overtaking vehicle may pass on right.*—(a) The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:

"(1) When the vehicle overtaken is making or about to make a left turn, and the driver of such vehicle has given a signal as required;

"(2) Upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for two or more lines of moving vehicles in each direction;

"(3) Upon a one-way street, or upon any roadway on which traffic is restricted to one direction of movement, where the roadway is free from obstructions and of sufficient width for two or more lines of moving vehicles.

"(b) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driv-

ing off the pavement or main travelled portion of the roadway. (Code 1950, § 46-226; 1952, c. 666; 1958, c. 541.)"

Because of the refusal of the court to admit in evidence the testimony of Peters and Mrs. Trotman relative to an impeachment of the credibility of Peters, the judgment is reversed; the verdict of the jury set aside; and the case remanded for a new trial.

*Reversed and remanded.*