Present:  All the Justices

SAINT PAUL HOLMES

v.  Record No. 981428

JOHN DOE

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
April 16, 1999

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Charles L. McCormick, III, Judge

In this appeal, we consider whether, in a jury trial of an automobile accident liability claim, the trial court properly permitted the introduction of expert testimony concerning the relationship between tire tread depth and hydroplaning.

On July 29, 1996, pursuant to the uninsured motorist provisions of his insurance policy and Code § 38.2-2206, Saint Paul Holmes filed a "John Doe" action seeking damages for injuries he sustained in an automobile accident on September 1, 1995.  In his motion for judgment, Holmes alleged that as a result of the negligence of John Doe, the unknown driver of a tractor-trailer truck, Holmes lost control of his vehicle, which then left the highway and collided with a tree.  Holmes sought $450,000 in damages.

Government Employees Insurance Company, Holmes's automobile liability insurance carrier, defended the action in the name of John Doe.  In the grounds of defense, Doe denied liability and asserted that the accident was the result of Holmes's own negligence.  It was Doe's contention that Holmes had been

operating his vehicle too fast for the highway and weather conditions, causing it to hydroplane.

During a jury trial, the trial court instructed the jury on the requirements for finding a "John Doe" motorist liable and on the effect of contributory negligence. The jury returned its verdict for Doe. We awarded Holmes this appeal.

Upon familiar principles, we relate the essential facts concerning the accident in the light most favorable to Doe, the prevailing party in the trial court. Immediately prior to the accident, Holmes was operating his 1993 Ford Mustang, a rear-wheel drive vehicle, in the right-hand lane of Interstate 85 behind a tractor-trailer truck. Because Holmes did not want to follow the truck, he drove his vehicle into the left-hand lane. The truck then exhibited a left turn signal and also pulled into the left lane in front of Holmes's vehicle. There was no contact between the vehicles. Holmes applied his brakes and his vehicle "started shaking and started sliding to the right." It then began "rotating around," went off the right side of the highway, and ultimately collided with a tree.

At the point of the accident, the highway was straight and level. A heavy rain was falling and there was standing water on the roadway. The posted speed limit was 65 miles per hour, and Holmes had been operating his vehicle at that speed. Holmes was unable to identify the driver or owner of the truck.

2

Prior to trial, the parties stipulated that all four tires on Holmes's vehicle had at least the statutory minimum tire tread depth of 2/32nd of an inch. Code § 46.2-1043. At the time of the accident, the two front tires had treads 9/32nd of an inch in depth, the left rear tire had a tread 3/32nd of an inch in depth, and the right rear tire had a tread 2/32nd of an inch in depth.

Relevant to the issue presented in this appeal, Thomas O. Lee qualified as an expert to testify on the conditions under which there can be a loss of highway traction resulting from a loss of contact between an automobile tire and a wet road surface, commonly known as hydroplaning. In a pre-trial hearing, the trial court ruled that because Lee had no specific knowledge of the road conditions at the time and place of Holmes's accident, Lee's testimony would be limited to "the principles of hydroplaning." Prior to permitting Lee to testify, the trial court reiterated that Lee would not be permitted "to particularize this accident."

At one point in his testimony, Lee stated that a tire with a tread 2/32nd of an inch in depth "is illegal in this state." Responding to Holmes's objection, the trial court stated that "[t]he jury has already been told that [2/32nd of an inch is a legal tire tread depth in Virginia]. I think what Mr. Lee meant to say was that if it's less than 2/32." Lee agreed with the

3

trial court that he had misspoken, apologized, and corrected his testimony. Holmes's counsel responded, "Perhaps. That's fine."

Lee then testified that a tire with a tread of the minimum legal depth was "not safe on wet surfaces" and that a tire that has a tread 2/32nd of an inch in depth "should be removed." Holmes again objected that this was contrary to the stipulation of legal minimum tire tread depth. The trial court responded that "the jury understands that 2/32's of an inch is legal in Virginia." Holmes's counsel responded, "Absolutely."

The balance of Lee's testimony was devoted to describing the physical circumstances of speed, condition of an automobile's tires, road surface conditions, and weather conditions under which a vehicle might hydroplane. More specifically, Lee explained that a tire is supposed to channel road water through circumferential voids between the ribs of the tire so that water can get through the tire treads when the tread is in motion going down the pavement. He further explained that "when the vehicle is moving down the [wetted] pavement, it builds up a wedge of water in front of the tire" and "[i]f the water is sufficient enough, it will lift the tire off the pavement and provide an insulation between the tire and the pavement. . . . [W]hen that totality takes place, that's called hydroplaning; in other words, skiing on water." Lee further explained that where the tread depth of a tire is low

4

"it would not permit the water to get through as easily and would thus reduce the hydroplaning speed of the tire."

Lee testified that hydroplaning results from a combination of factors including the depth of the water, the speed of the vehicle, the depth of the tire treads, and the type of road surface. He further testified that for a rear-wheel drive vehicle, the tread depth of the rear tires was the essential factor and that when "tread depth . . . of those tires is down towards the minimum, the hydroplaning speed dramatically drops . . . [I]t can drop as much as 10 miles an hour."

During Lee's testimony, Holmes asserted numerous objections, contending that Lee was testifying to matters within the common knowledge of the jury or that Lee was, without adequate foundation, offering speculative opinions on the ultimate question of fact.

On appeal, Holmes first contends that the trial court erred in permitting Lee to testify that a tire tread 2/32nd of an inch in depth was not legal in Virginia. The record amply demonstrates, however, that Lee corrected his misstatement and that the jury was properly instructed on several occasions on that issue. Accordingly, there is no merit to this contention.

Holmes further contends that Lee's testimony that a tire tread 2/32nd of an inch in depth was unsafe for use on a wet road surface and that tires with the minimum tread depth should

5

be removed from a vehicle was inadmissible because these contentions were contrary to the provisions of Code § 46.2-1043. We disagree.

Subsequent to the initial misstatement of the law, which Lee corrected, none of Lee's statements expressed an opinion that a tire tread 2/32nd of an inch in depth was "illegal," but, rather, that it was "unsafe." Code § 46.2-1043, although a safety-related statute, reflects a policy decision of the legislature in establishing the minimum tire tread depth for the operation of motor vehicles in this Commonwealth. The statute does not purport to address the specific safety concerns for operating a vehicle with minimum depth treads under the circumstances of this case. Lee, however, was qualified to offer an opinion on tire safety, his area of expertise.

Holmes further contends that Lee's testimony was speculative because Lee had no specific knowledge of the road and weather conditions at the time of the accident. However, a careful review of the record reveals that, in accord with the trial court's limitation on his testimony, Lee testified only about hypothetical tire, road, and weather conditions in order to explain "the principles of hydroplaning." Lee never opined what the conditions at the time and place of the accident were, nor did he offer an opinion as to the cause of Holmes's accident. Rather, Lee's testimony was limited to explaining the

6

general relationship of hydroplaning to wet road conditions, tire tread depth, and speed.  Accordingly, there is no basis for Holmes's contention that this testimony was improperly speculative.

Finally, Holmes contends that Lee's testimony was irrelevant because the jurors could, from their common experience, draw their own conclusions about the effect of the road conditions on Holmes's ability to control his vehicle.  We disagree.  While it is certainly true that the danger of hydroplaning is a matter of common experience, knowledge of the scientific cause of hydroplaning is not.  Determining the conditions under which a vehicle will hydroplane requires an understanding of multiple variables that are not within the common knowledge of the average citizen.  See, e.g., Bush v. State of Louisiana, 395 So. 2d 916, 919 (La. Ct. App. 1981).

Expert testimony is admissible where the jury "is confronted with issues that require scientific or specialized knowledge or experience in order to be properly understood, and which cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life."  Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755-56 (1979)(citation omitted); see also Neblett v. Hunter, 207 Va. 335, 339-40, 150 S.E.2d 115, 118

7

(1966).  Here, the jury heard evidence from other witnesses concerning the weather, road, and traffic conditions and Holmes's speed of travel.  Lee's expert testimony was appropriate to aid the jury in putting this factual evidence into an appropriate context from which the jury could draw its own conclusions.  Code § 8.01-401.3(A); see also Lawson v. John Doe, 239 Va. 477, 482-83, 391 S.E.2d 333, 336 (1990).  Accordingly, Lee's testimony was not irrelevant and was an appropriate topic of expert testimony in this case.

For these reasons, we will affirm the judgment of the trial court sustaining the jury's verdict for Doe.

Affirmed.