PRESENT: Carrico, C.J., Compton, Lacy, Keenan, Koontz, and
         Kinser, JJ., and Stephenson, Senior Justice

TIMOTHY PAUL BREEDEN

                                        OPINION BY
v.  Record No. 982556    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        September 17, 1999
JAMES R. ROBERTS, ET AL.


            FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                        James A. Luke, Judge

     The principal issue in this appeal is whether the trial

court erred in excluding certain expert opinion evidence.

     James R. Roberts sued Timothy Paul Breeden, seeking damages

for personal injuries Roberts sustained in an automobile

collision that occurred in the City of Hopewell.  Roberts

alleged that Breeden's negligent operation of a motor vehicle

proximately caused his injuries.  The case was tried to a jury,

which returned a verdict in favor of Roberts in the amount of

$30,000.  The trial court entered judgment on the verdict, and

Breeden appeals.

     On the morning of January 2, 1996, Roberts, a police

officer for the City of Hopewell, was operating a city police

car on Mesa Drive, a four-lane street divided by double yellow

lines.  Roberts was proceeding in the far-right northbound lane

of travel.  At the time, the roadway was wet from a recent rain.

     Roberts testified that, as he approached a railroad

crossing, he observed a pickup truck travelling in the far-right

southbound lane of the street and also approaching the railroad crossing. Roberts thought the truck was exceeding the 35-mile-per-hour speed limit, and he planned to make a U-turn and stop the truck. As Roberts slowed his vehicle, preparing to turn, the truck crossed the railroad tracks, began to "fishtail," crossed the double yellow lines, and collided with Roberts' patrol car. The truck's rear bumper and left rear tire struck the front of the police vehicle.

Breeden, the operator of the truck, testified that, when he applied the truck's brakes as he approached the railroad tracks, the rear of his truck "slipped out to the right." He then "countersteered" and reapplied the brakes. At that point, however, the brakes locked, and the rear end of the truck "swung . . . out to the left," causing the truck to cross the double yellow lines and collide with the police car.

A city police sergeant investigated the accident. After Breeden mentioned the alleged brake problem to the sergeant, the sergeant suggested that Breeden have a mechanic examine the truck's braking system.

Two days after the accident, Breeden's truck was towed to an automobile mechanic's shop, owned and operated by Chester Leroy Damron, a mechanic with 40 years' experience. Damron examined the truck's braking system and found that the left rear brake adjuster was "froze[n]."

2

At trial, Breeden sought to have Damron explain to the jury how a frozen brake adjuster would affect the operation and performance of a motor vehicle. The trial court, however, sustained Roberts' objection and refused to allow this testimony.

According to Breeden's proffer, Damron would have testified that a frozen brake adjuster prevents a vehicle's brakes from "working together." When the brakes are not working together, one side of the vehicle "is going to want to stop faster than the other side." This will cause the vehicle to slide and "fishtail," especially when the road's surface is wet.

Roberts contends that the trial court properly excluded Damron's testimony because Damron could not say that the frozen brake adjuster caused the accident. Damron's testimony, however, was not offered to prove the cause of the accident; rather, it was offered merely to explain the effect a frozen brake adjuster has on the operation and performance of a vehicle.

In Holmes v. Doe, 257 Va. 573, 578, 515 S.E.2d 117, 120 (1999) (decided after the trial court ruled in the present case), we held that the trial court properly allowed an expert witness to explain the principles of hydroplaning and how a tire tread's depth affects the operation and performance of a vehicle under certain conditions. In Holmes, we noted that the expert

3

"never opined what the conditions at the time and place of the accident were, nor did he offer an opinion as to the cause of [the] accident. Rather, [the expert's] testimony was limited to explaining the general relationship of hydroplaning to wet road conditions, tire tread depth, and speed." Id. We think the Holmes rationale applies in the present case.

Roberts further contends that Damron's testimony was properly excluded because Damron "was unable to testify as to the condition of the brake at the time of the accident." Additionally, Roberts observes that "the vehicle had experienced an impact in the area of the left rear wheel in the . . . accident." The record shows that Damron examined the truck's braking system a mere two days after the accident, and there is no indication or suggestion that a change in the condition of the braking system had occurred during the two-day period. Moreover, Damron stated that the impact from the accident would not have caused the brake adjuster to freeze. Therefore, we think these assertions by Roberts go only to the weight to be given to Damron's testimony and not to its admissibility.

In sum, we conclude that Damron's excluded testimony was relevant because it tended to support Breeden's contention about why he lost control of his truck. The proffered testimony was based upon the knowledge and experience of a qualified mechanic and was not speculative. Moreover, Damron's opinion testimony

4

related to a matter of inquiry that was beyond the ordinary knowledge, intelligence, and experience of a jury. See, e.g., Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755-56 (1979); Neblett v. Hunter, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966). Therefore, we hold that the trial court erred in excluding Damron's proferred testimony.

A second issue is whether the trial court erred in excluding the testimony of Edith Winters. During Roberts' cross-examination, Breeden's counsel asked him whether, on a specific occasion, he had bragged to some police officers "about how much money [he was] going to get out of this lawsuit." Roberts denied making the statement, and he neither objected to the question nor moved to have it and the answer stricken.

When, however, Breeden's counsel endeavored to pursue the subject further by identifying Winters as the person who heard Roberts' alleged statement, Roberts' counsel interposed an objection. Roberts' counsel argued that "to bring in somebody . . . to contradict the statements is improper." Counsel also asserted that Winters had not been subpoenaed, put on the witness list, or "identified in discovery as a witness."

The trial court sustained Roberts' objection and refused to allow Winters to testify. The record suggests that the trial court determined that Winters' testimony was not relevant. Thereafter, Breeden proffered that Winters would have testified

5

that she "heard [Roberts], following the accident, . . . talking to several police officers, bragging that he was buying a new home and that he was going to get as much money as he could out of the lawsuit."

On appeal, Roberts contends that Winters' testimony was properly excluded because it was irrelevant on the issues of credibility and damages. He also contends that the exclusion was proper "to avoid the unfair surprise of an undisclosed witness." We do not agree.

Generally, after a proper foundation has been laid, the credibility of a witness may be impeached by showing that the witness, on a prior occasion, made statements that were inconsistent with or contradictory of the witness' evidence at trial. Cassady v. Martin, 220 Va. 1093, 1099, 266 S.E.2d 104, 107 (1980); Neblett, 207 Va. at 340, 150 S.E.2d at 119. Thus, in the present case, Winters' testimony was proper because it impeached Roberts' credibility. Having allowed Breeden to lay a foundation for Roberts' statement, the trial court erred in excluding evidence that contradicted the statement.

Testimony is relevant, and should be considered by a jury, if, when considered in relation to other evidence in the case, it tends to establish a party's claim or defense or adds force and strength to other evidence bearing upon an issue in the case. McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 628,

6

74 S.E.2d 165, 169 (1953).  "The criterion of relevancy is whether or not the evidence tends to cast any light upon the subject of the inquiry."  Id. at 629, 74 S.E.2d at 169. Therefore, in the present case, Winters' testimony also was admissible to prove an admission by Roberts on the merits of the case.  See, e.g., Tyree v. Lariew, 208 Va. 382, 385, 158 S.E.2d 140, 143 (1967), and cases cited therein.  Roberts' statement related to and tended to cast light upon the issue of his injuries and the extent of his damages.[*]

Accordingly, we will reverse the trial court's judgment and remand the case for a new trial.

Reversed and remanded.

---

[*] We also conclude that, because Winters was offered in rebuttal, Breeden was not required to have disclosed her as a witness. Whether she became a witness depended upon Roberts' testimony at trial.