# CIRCUIT COURT OF THE CITY OF SUFFOLK

Elizabeth T. Rhodes

v.

Lance, Inc.,
and Sherman Hughson

May 21, 2001

Case No. (Law) 100-292

BY JUDGE D. ARTHUR KELSEY

The plaintiff, Elizabeth T. Rhodes, has filed a motion *in limine* objecting to the expert testimony proffered by the defendants.[1] Contending that the expert intends to offer an accident reconstruction opinion, the plaintiff seeks a pretrial ruling declaring this testimony inadmissible in its entirety. The Court finds that the proffered testimony passes the gatekeeping tests in some respects but not others. The plaintiff's motion *in limine*, therefore, will be denied in part and granted in part.

Travelling south on Bridge Road, a divided two-lane highway, the plaintiff struck the defendant broadside as he turned left onto Lee Farm Lane heading west. The accident happened at about 9:30 a.m. on May 18, 2000. The weather was clear and the pavement dry. According to the plaintiff, the defendant came to a full stop in the left-turn lane and then proceeded to make the turn through the intersection while the light was still red. The defendant

---

[1] Boyd Scarborough of Griffin, Pappas & Scarborough, along with Scott V. Whitlow of Spence & Whitlow, represent the plaintiff. Jeffrey F. Brooke of Huff, Poole & Mahoney represents the defendants.

claims the plaintiff simply ran the red light, without slowing down and probably without even noticing it. The defendant began his turn, he claims, only after waiting for his red light to become a green-arrow light. In short, both the plaintiff and defendant claim to have had the green light.

According to a traffic engineer for the Virginia Department of Transportation, the signal cycle for this intersection begins as a green light to drivers traveling north and south on Bridge Road. It stays green for a minimum of fifteen seconds unless sensors embedded in the roadway sense the presence of traffic. If they do, the green light time may be extended to a maximum of thirty-five seconds. At the end of the green-light display comes a yellow light for about four seconds, followed by a red light. For two seconds all lanes in all directions get a red light. At the end of the two-second all-red period, a green light displays for drivers on Lee Farm Lane if the sensors detect vehicles there. That green light remains displayed for a period of seven to twenty-five seconds, as determined by the roadway sensors. Another yellow light appears for three and a half seconds, followed by another all-red signal for all approaches for one and a half seconds.

Sensors in the left-turn lane (from Bridge Road northbound on to Lee Farm Lane westbound) trigger a green-arrow light for a period of seven to twenty-seven seconds, depending on traffic volume. Drivers southbound on Bridge Road, of course, receive a red light during this time frame. The green-arrow light becomes a yellow arrow for three and a half seconds and then triggers another all-red display for all approaches for one and a half seconds.

The defendant retained David O. McAllister, an accident reconstruction consultant with extensive experience in traffic engineering and accident investigations. As required by the Court's scheduling order, the defendant filed a copy of McAllister's expert report outlining his opinions and credentials. The report provides a summary of his factual research, which includes reviewing various depositions, analyzing the state engineer's description of the signal cycles, conducting an independent examination of the signal sequencing, and attending on-site interviews with the investigating police officer. From these sources, McAllister learned that Suffolk Police Officer S. T. Howe, while travelling northbound on Bridge Road, passed by the defendant's vehicle while it was stopped in the left-turn lane at the intersection. After going through the intersection, Howe saw through one of his rear-view mirrors the plaintiff strike the defendant's vehicle as it turned left on to Lee Farm Lane.

Officer Howe also met with McAllister and reenacted the intersection drive-by, estimating points in time where Howe saw both the plaintiff's and defendant's vehicles. Using Howe's estimates of speed and distance,

McAllister created track-lines reflecting the relative positions of the vehicles. From there, McAllister synthesized Howe's recollection with the known sequencing characteristics of the signals. Having done this exercise, McAllister concludes that — assuming the accuracy of Howe's factual observations — approximately nineteen seconds elapsed while the defendant remained stopped in the left-turn lane. McAllister also determined that the amount of time needed for the red signal to turn to a green arrow once a vehicle stops in the left turn lane varies from six to forty-one seconds, with an average of about nineteen seconds. This time frame, when coupled with the signal sequence, leads McAllister to conclude "within a reasonable degree of professional certainty that [the defendant] had a green traffic light facing him at the time of the crash." McAllister's Report, at 4 (Mar. 27, 2001).

A trial court should permit a litigant "to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility." *Tarmac Mid-Atlantic v. Smiley Block Co.*, 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995) (citations omitted). Expert testimony should be received into evidence if the testimony will "aid the trier of fact in understanding the evidence." *Keesee v. Donigan*, 259 Va. 157, 161-62, 524 S.E.2d 645, 647 (2000); *Tittsworth v. Robinson*, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996); *see* Va. Code Ann. § 8.01-401.3 (Michie 2000). The law nonetheless requires that the proposed expert testimony satisfy "certain fundamental requirements" before a trial court, exercising its evidentiary gatekeeping function, should admit the evidence. *Keesee*, 259 Va. at 157, 524 S.E.2d at 647; *see also* Charles E. Friend, *The Law of Evidence in Virginia* §§ 17-14 to 17-26, at 590-640 (5th ed. 1999).

With respect to understanding general technical principles affecting vehicles, the Virginia Supreme Court has held that expert opinions may be received on an abstract basis (that is, without linking up the particular principle at issue with the specific facts of a given case) in cases that do not "require" any specific nexus between the general principle and the specific "drivers involved in the cases, the condition of their vehicles, or other circumstances in which the accidents occurred." *Keesee*, 259 Va. at 161-62, 524 S.E.2d at 648 (citing *Holmes v. Doe*, 257 Va. 573, 578, 515 S.E.2d 117, 120 (1999); *Breeden v. Roberts*, 258 Va. 411, 414-16, 518 S.E.2d 834, 836-37 (1999)). An opinion about abstract principles contains a built-in limitation in that it does not "attempt to relate" these principles to a "particular driver or vehicle." *Id.*

Examples of the abstract expert testimony include technical explanations of the "general relationship between a vehicle 'hydroplaning' and the factors

of wet road conditions, tire tread depth, and vehicular speed," *id.* (citing *Holmes*, 257 Va. at 578, 515 S.E.2d at 120), as well as testimony from a mechanic "regarding the effect that a frozen brake adjuster has on the operation and performance of a vehicle." *Id.* (citing *Breeden*, 258 Va. at 414-16, 518 S.E.2d at 836-37). In such cases, the jury looks to non-expert evidence to discern the specific application of the general principle to the facts of that case — that is, so long as the jury believes such an effort is warranted. In this capacity, the expert serves as a scientific or technical resource for the fact finder.

Accident reconstruction experts often attract "hostile" attention from the courts, Friend, *supra* § 17-26, at 639, because these kinds of experts engage various technical principles for the very purpose of applying them to the specific facts of the case in an effort to reconstruct exactly what happened. In such cases, courts typically adopt a gate-closed attitude when reconstruction experts lay out cascading general-to-specific assertions without verifying each step in the syllogism with specific facts. *See, e.g., Brown v. Corbin*, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). This concern, more than any other, explains the observation that "accident reconstruction expert testimony is rarely admissible in Virginia." *Id.*

*Keesee* illustrates this point well. There, an accident reconstruction expert provided testimony concerning average driver reaction times and assumed the plaintiff fit within the statistical norm. His testimony was inadmissible because the expert "applied his testimony to a particular driver" without performing visual acuity and cognitive tests to determine if the driver fit within the average category. *Keesee*, 259 Va. at 162, 524 S.E.2d at 648. This factual omission undermined the probative value of the expert testimony, rendering it an inadmissible "assumption" lacking an adequate "factual basis in the record." *Id.* (citing *Tittsworth*, 252 Va. at 154, 475 S.E.2d at 263; *Tarmac Mid-Atlantic*, 250 Va. at 166, 458 S.E.2d at 466)). An expert's testimony, after all, "should not be admitted unless the trial court is satisfied that the expert has considered *all the variables* bearing on the inferences to be drawn from the facts observed." *Tarmac Mid-Atlantic*, 250 Va. at 166, 458 S.E.2d at 466 (emphasis added).

A different, but equally important, limiting principle governs expert testimony. Such testimony may not concern a matter "within the range of common knowledge" of the fact finder. *Virginia Power v. Dungee*, 258 Va. 235, 258, 520 S.E.2d 164, 177 (1999); *David A. Parker Enters., Inc. v. Templeton*, 251 Va. 235, 237, 467 S.E.2d 488, 490 (1996). Expert testimony on matters of common knowledge involves a contradiction in terms. By definition, expertise involves knowledge beyond that commonly understood.

Expert testimony on such matters would not "assist the trier of fact" to understand the evidence or to determine a disputed fact. Va. Code Ann. § 8.01-401.3(A). An expert's testimony, therefore, should be excluded if "it relates to matters about which the fact finder is equally as capable as the expert of reaching an intelligent and informed opinion." *Virginia Power*, 258 Va. at 258, 520 S.E.2d at 177; *Kendrick v. Vaz, Inc.*, 244 Va. 380, 384, 421 S.E.2d 447, 449 (1992). Even so, it must be conceded that the difference between common and uncommon knowledge can sometimes be illusive. *See, e.g., Norfolk Southern Ry. v. Bowles*, 261 Va. 21, 25, 539 S.E.2d 727, 729 (2001) (whether a manual task is "physically easy or difficult to perform" is a matter of common knowledge, but whether the same task is safe or unsafe is not).

Finally, expert testimony cannot be excluded on the ground that it invades the jury's decision-making role on ultimate issues. In Va. Code Ann. § 8.01-401.3(B), the Virginia General Assembly "legislatively abrogated the 'opinion rule' in civil proceedings." *Lafon v. Commonwealth*, 17 Va. App. 411, 420, n. 2, 438 S.E.2d 279, 285, n. 2 (1993). As the statute makes clear, expert testimony cannot be excluded solely because it involves "the ultimate issue" or an opinion about facts "critical to the resolution of the case." *R. K. Chevrolet, Inc. v. Hayden*, 253 Va. 50, 57, 480 S.E.2d 477, 482 (1997) (quoting § 8.01-401.3(B)). That does not mean, however, that experts can be used for matters of common knowledge. The common-knowledge bar rests not on the ground that the expert testimony touches on the core issue of the case (it may or may not do so), but rather that expertise is simply unneeded.

Much of the proposed testimony of McAllister does not offend these principles. McAllister's analysis does not rely on any assumption that does not have some arguable factual support, either from the deposition testimony of the parties, or Officer Howe's recollection, or McAllister's personal observations. He accounts for every variable, and the plaintiff identifies none McAllister allegedly missed. Any one of the facts underlying McAllister's testimony may later be discredited at trial by other evidence, and thereby topple McAllister's opinion. Nevertheless, the "validity of the reasoning process" of an expert presents a "question for the trier of fact, and goes only to the weight to be accorded to the opinion." *Friend, supra* § 17-21, at 635.

Relying on the common-knowledge rule, the plaintiff argues that McAllister's synthesis of the factual testimony about vehicle positions, speed, relative positions and their interplay with the signal sequencing engineered at this particular intersection can be duplicated by the jurors by using mathematical equations. For example, the feet traveled per second at various speeds can be determined from the statutory table in Va. Code Ann. § 46.2-

880 (Michie 1995).[2] From there, the jury can take testimony about the distances traveled by Officer Howe, as well as the plaintiff and defendant, and plot track-lines for each vehicle and then plug each one into the known sequencing characteristics of the various signals at this intersection.

This exercise, the plaintiff argues, can take place without the assistance of McAllister. Perhaps so. But the issue is not whether reasonably intelligent jurors could somehow figure it out on their own. It is whether their aptitude for doing so makes it likely that testimony from a more experienced witness would not "assist" in their effort to "understand the evidence" or to "determine a fact" in dispute. Va. Code Ann. § 8.01-401.3(A). Virginia cases consistently underscore this distinction. *See, e.g., Brown v. Corbin,* 244 Va. 528, 531, 423 S.E.2d 176, 178-79 (1992) (the issue is whether a lay person of average intelligence is "equally capable" as the expert of understanding the point); *Lopez v. Dobson,* 240 Va. 421, 423, 397 S.E.2d 863, 865 (1990) (court should consider whether the jury is "as competent" to form an intelligent and accurate opinion as the expert witness); *Grasty v. Tanner,* 206 Va. 723, 726, 146 S.E.2d 252, 254 (1966) (trial judge should ask whether the jury is "as competent" as the expert to form an opinion on the subject). Framed that way, the issue must be resolved in favor of admitting the bulk of McAllister's proposed testimony. It is not that the math itself is overly complex. It is the interplay between the speed/distance calculations and the signal sequence times which presents a level of analysis that, while arguably within the capability of a lay jury to understand, would still benefit from additional testimony from an expert.

The ultimate conclusion reached by McAllister, however, is little more than a simple inference about probabilities. He opines that, given the track-lines he plots for the vehicles and the timing of the signal sequence, the defendant more probably than not had the green light. McAllister comes to this conclusion because, under his calculations, the defendant remained stopped in the left-turn lane about nineteen seconds before making the turn. This put the defendant within the six to forty-one second range, the engineered limits of that portion of the signal sequence. The calculated time also nicely parallels the "average" nineteen-second period observed by McAllister during his site inspection.

---

[2] McAllister does not attempt to calculate the speed of any vehicles. Instead, he relies entirely upon selected versions of the factual testimony of the drivers. McAllister does not violate, therefore, the prohibition in *Thorpe v. Commonwealth,* 223 Va. 609, 613-14, 292 S.E.2d 323, 326 (1982), against expert testimony on speed where there are "too many missing variables" not addressed by the factual record.

Even if this "average" can be relied upon to reconstruct the situation at the time of the accident (a matter to be addressed next), the green-light conclusion needs no expertise at all. Once the signal sequencing and relative vehicle positions are explained to them, the jurors are as competent as any expert to determine who had the green light. Here again, the problem with the green-light conclusion is not that it addresses the ultimate issue in the case. That objection has been overtaken by Va. Code Ann. § 8.01-401.3(B). Instead, the green-light opinion involves an inference the jury is equally capable as McAllister of understanding.

As for the nineteen-second "average" period, McAllister reached this conclusion after observing fifteen sequences of left-turn traffic "on a typical, mid-morning weekday in March 2001," nearly a year after the accident. *See* McAllister Expert Report ¶ 4, at 3 (March 27, 2001). It is unclear whether other evidence in the case will demonstrate that traffic volume on that "typical, mid-morning weekday" in March 2001 was anything like the volume on May 18, 2000, the day of the accident. Given the sensors imbedded in the road, both the volume and the frequency of vehicles entering the intersection will determine an "average" waiting period for any given signal change.

When an expert testifies about test results, "such testimony should be excluded unless there is proof that the conditions existing at the time of the tests and at the time relevant to the facts at issue are substantially similar." *Tittsworth v. Robinson*, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996); *Tarmac Mid-Atlantic, Inc.*, 250 Va. at 166, 458 S.E.2d at 466; *Runyon v. Geldner*, 237 Va. 460, 463-64, 377 S.E.2d 456, 458-59 (1989). Consequently, absent a showing that the conditions existing on the day of the test substantially coincide with those on the day of the accident, the nineteen-second "average" has no relevance and should not be admitted. The Court will hold this specific issue in abeyance until trial.

McAllister's proposed testimony about the track-lines of the vehicles entering the intersection and their relationship to the signal sequencing times presents issues within the scope of permissible expert testimony. On these matters, the plaintiff's motion *in limine* will be denied. On the other hand, McAllister's conclusion that the defendant had the green light is nothing more than an inference — based on reasonably debatable probabilities, to be sure — but nonetheless an inference a layman is equally competent to reach without the unhelpful imprimatur of an expert. On this point, the Court grants the plaintiff's motion *in limine*. Finally, any testimony about a nineteen-second average wait period for the left-turn lane will be admitted at trial only upon a showing of substantial similarity between the conditions at the time of

the site inspection and the day of the accident. The motion *in limine* will be held in abeyance on this discrete issue. It is so ordered.