# CIRCUIT COURT OF THE CITY OF NORFOLK

Lynn Zoll

v.

Werner Enterprises, Inc., et al.

September 20, 2007

Case No. CL05-27

BY JUDGE JOHN C. MORRISON, JR.

This case came before the Court on March 6, 2007, March 8, 2007, March 20, 2007, and August 23, 2007, for hearings on Defendants' Motion *in Limine* to Exclude the Expert Opinions of Charles DeMark and Defendants' Motion *in Limine* to Exclude the Expert Opinions of Liniel G. Gregory. I have reviewed the pleadings and the memoranda submitted by the parties and have considered the arguments presented by counsel for both parties. The following will set forth my rulings on both motions.

## *Legal Standard*

Expert testimony is "inadmissible on any subject on which the ordinary lay person of average intelligence is equally capable of reaching his or her own conclusions." *Brown v. Corbin*, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). However, expert testimony may be admitted "if it will aid the trier of fact in understanding the evidence." *Keesee v. Donigan*, 259 Va. 157, 161,

524 S.E.2d 645, 647 (2000). Such testimony must "be based on an adequate foundation" and will be excluded "if it is founded on assumptions that have an insufficient factual basis." *Id.* at 161.

## Liniel Gregory

The Defendants argue that Gregory is being offered as an "accident reconstructionist," and that such testimony is rarely admitted as it "invades the provinces of the jury." *Brown,* 244 Va. at 531. Plaintiff counters that Gregory is being offered to testify about matters in the trucking industry that ordinary jurors would not understand.

In *Holmes v. Doe,* 257 Va. 573, 575, 515 S.E.2d 117, 118 (1999), the Court upheld the admission of expert testimony "concerning the relationship between tire tread depth and hydroplaning." In that case, the expert was qualified "to testify on the conditions under which there can be a loss of highway traction resulting from a loss of contact between an automobile tire and a wet road surface, commonly known as hydroplaning." *Id.* at 576. The trial court had previously ruled that "because [the expert] had no specific knowledge of the road conditions at the time and place of [the] accident, [expert] testimony would be limited to 'the principles of hydroplaning'," and the expert "would not be permitted 'to particularize this accident'." *Id.* at 576. The Supreme Court held that the testimony admitted by the trial court "was appropriate to aid the jury in putting this factual evidence into an appropriate context from which the jury could draw its own conclusions." *Id.* at 578.

Additionally, in *Breeden v. Roberts,* 258 Va. 411, 414, 515 S.E.2d 834, 836 (1999), the Supreme Court upheld expert testimony concerning "how a frozen brake adjuster would affect the operation and performance of a motor vehicle." The defendant objected because the expert "could not say that the frozen brake adjuster caused the accident." *Id.* at 414. However, the Court found that the testimony "was not offered to prove the cause of the accident; rather, it was offered merely to explain the effect a frozen brake adjuster has on the operation and performance of a vehicle." *Id.* Therefore, the Court held that the expert testimony was admissible.

In *Keesee,* the Supreme Court held inadmissible "an automobile accident reconstruction expert concerning 'average' human perception and reaction times." *Keesee,* 259 Va. at 158. In that case, the expert "acknowledged that he had not tested [the defendant's] vision or assessed his cognitive and physical abilities but assumed that they were 'normal'." *Id.* at 159-60. The Court held that such testimony was inadmissible because "the probative value of that evidence rested on assumptions about [the defendant]

that had no factual basis in the record." *Id.* at 162. The Court then went on to distinguish the case from the facts in *Roberts* and *Holmes.* The Court found that those cases concerned "general scientific and technical principles [that] did not require any specific information about the drivers involved in the cases, the condition of their vehicles, or other circumstances in which the accidents occurred." *Id.* at 162. In other words, expert testimony regarding general scientific or technical principles is admissible where such principles do not require specific information about the specific persons and/or circumstances of the case.

Plaintiff argues that the following opinions of Gregory qualify as admissible expert testimony: (A) the physical properties of the particular tractor-trailer Rutledge was driving; (B) the effect of Rutledge's lack of familiarity with the tractor-trailer; (C) the basis for Gregory's opinion that Rutledge was negligent; and (D) Gregory's opinion that Banks was also negligent. *See* Plaintiff's March 8, 2007, Memorandum at 3-8. Generally, these opinions address the physical properties of the tractor-trailer, the proper adjustment of mirrors and use of the jake brake, industry standards for drivers in training and their trainers, and the effect of Rutledge's and Bank's negligence in contributing to the accident. Defendants contend that Gregory's testimony is inadmissible because he is not qualified in this area and he has no scientific basis for his opinions, as he has not inspected the actual truck driven by Rutledge.

The Court finds that Gregory is qualified to testify to the physical properties of the tractor-trailer and the trucking industry standards. Plaintiff has provided a detailed list of Gregory's qualifications in the trucking industry. *See* Plaintiff's Supplemental Interrogatory Answers Regarding Expert Witness Gregory, at 2. Furthermore, the case law is clear that expert testimony may address either "specialized," "scientific," *or* "technical" principles. *See Keesee,* 259 Va. at 161; *Holmes,* 257 Va. at 578. The testimony offered by the Plaintiff, such as the proper adjustment of mirrors and use of the jake brake, and trucking industry standards for drivers appear to fall into the category of admissible "specialized" or "technical" principles that the ordinary lay person may not know. Such testimony would aid the trier of fact in understanding the facts in this case. However, Gregory may not testify about what effect these factors had in causing the accident in this case, as the jury should be able to reach their own conclusions on this issue.

*Charles DeMark*

DeMark is offered by the Plaintiff to testify about the Plaintiff's expected loss of earning capacity. DeMark previously prepared a vocational evaluation on the Plaintiff's future vocational options and wage earning capacity. (DeMark's July 25, 2006 Report will hereafter be cited as "DeMark's Report.") DeMark is prepared to testify that Plaintiff had an earning capacity of $10 per hour for forty hours a week, earning $20,000 for the next seven years. DeMark's Report at 6. DeMark found that, prior to the accident, Plaintiff could have potentially been employed as a hostess, voice over recording specialist, staff counselor, peer counselor, and/or receptionist. *Id.* at 5. The Defendants object to this testimony "as contrary to reality" because the Plaintiff "had never worked a forty hour week or earned more than $3,300." Defendants' Memorandum in Support of Defendants' Motion *in Limine*, at 1. Additionally, Defendant argues that DeMark's conclusion that Plaintiff could be a voice over artist was based on "fictional assumptions" as she only had one job as a voice over artist, for which she made $114. *Id.* at 4-5. In Plaintiff's Reply to Defendants' Motion, counsel asked that the Court allow DeMark to testify as to Plaintiff's 2003 earnings, and "how these could be projected out into loss of earning capacity." Plaintiff's March 12, 2007, Reply Letter at 1.

The Supreme Court has held that, "in order to form a reliable basis for a calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated." *Vasquez v. Mabini*, 269 Va. 155, 160 (2005). Furthermore, "[e]stimates of damages based entirely on statistics and assumptions are too remote and speculative to permit an 'intelligent and probable estimate of damages'." *Id.* at 159.

In *Vasquez v. Mabini*, the Plaintiff offered an expert to testify that she could have worked full time earning $16,000 per year until retirement. At the time of her death, however, she was not employed full time and was looking for clerical work. She earned less than $1000 the year before the accident, and her annual earnings for the preceding several years never exceeded $7000. Furthermore, she never held a full-time job or received fringe benefits. However, the expert stated that, because Vasquez was a hairdresser in the past, her potential earnings would be the same if she had found full time employment as a clerical worker. The Court held that "such projections lack the required grounding in the applicable facts" and are inadmissible. *Id.* at

160. Furthermore, the Court found that the testimony was "based upon fictional assumptions not supported by the evidence" and was "speculative and unreliable as a matter of law." *Id.* at 163.

The Court finds that DeMark's testimony regarding Plaintiff's 2003 earnings prior to the accident is admissible under *Vasquez.* It is uncontested that Plaintiff did earn some income prior to the accident and was able to hold a job for several months. Therefore, there are sufficient facts, specific to the Plaintiff, from which DeMark may base his projections of Plaintiff's future loss of earning capacity. However, he may not testify about the Plaintiff's qualifications and expected earnings in other fields, such as her voice over work. Any projections of loss of earning capacity in those fields would be speculative as Plaintiff has not done any significant work, if any, in those areas.

## Conclusion

Pursuant to the case law cited herein, the Court rules that Gregory and DeMark may testify about the trucking industry and the Plaintiff's earning capacity, respectively. Gregory is qualified to testify about the physical properties of a tractor-trailer, including the adjustment of the mirrors and proper use of the jake brake. Furthermore, he may testify about industry standards for tractor-trailer drivers. However, Gregory may not make conclusions about what caused the accident in this case. With regard to DeMark, the Court finds that he may testify about the Plaintiff's 2003 earnings and how those may project her loss of earning capacity due to the automobile accident in October of 2003. DeMark may not refer to the Plaintiff's "voice over" work or her qualifications in any other line of work.