Present:  All the Justices

JONATHAN R. DANDRIDGE

v.  Record No. 031457    OPINION BY JUSTICE ELIZABETH B. LACY
                                  April 23, 2004
ALBERT R. MARSHALL

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

Jonathan R. Dandridge filed a personal injury action against Albert R. Marshall seeking damages of $300,000.  In this appeal, Dandridge asserts that due to the trial court's error in three of its evidentiary rulings, the jury awarded him only $15,000.  For the reasons we state below, we will remand the case for a new trial on damages because the trial court erred in excluding certain testimony and allowing other testimony.

Facts

On December 5, 1999, Dandridge and Marshall were involved in an automobile accident.  An ambulance service transported Dandridge, complaining of nausea, blurred vision, and a severe headache, to the Medical College of Virginia Hospital for treatment.

Dandridge filed a motion for judgment alleging that Marshall's negligence caused the accident.  Prior to trial, Marshall admitted liability but contested the extent of

Dandridge's injuries stemming from the accident.  The case was submitted to the jury on the issue of damages only.

At trial, Dandridge testified that he had suffered a concussion in a prior automobile accident two months before his accident with Marshall.  According to Dandridge, the concussion from his prior accident forced him to withdraw from classes he was taking at Virginia Commonwealth University and left him with "moderate" headaches, neck pain, and an inability to study due to medication.  By the time of the second accident, Dandridge testified he "still had some residuals of neck pain and from [sic] minor headaches, but nothing that was debilitating," and that his health generally was improving.

Dr. Ross Bullock, a neurosurgeon and Dandridge's treating physician after his first accident, testified that in the first accident Dandridge had suffered whiplash and "mild to moderate traumatic brain injury" and that Dandridge would still have been feeling the effects of those injuries at the time of his second injury.

After his second concussion, Dandridge's symptoms included significantly more severe headaches, blurred vision, nausea, and difficulty concentrating.  Dr. David X. Cifu treated Dandridge after his second accident and diagnosed him with "post-concussive syndrome" due to his two accidents.

According to Dr. Cifu, 85-90% of those who suffer a single concussion make a full recovery within eighteen months, and patients rarely show any improvement beyond that time. While Dandridge was improving steadily before his accident with Marshall, in Dr. Cifu's opinion, the second concussion intensified his symptoms. Because Dandridge continued to suffer the effects of these concussions as of his last visit with Dr. Cifu on January 24, 2002, Dr. Cifu suggested that Dandridge seek treatment from a psychiatrist or a pain-management specialist. Another physician, Dr. Martin Stein, treated Dandridge with pain medication, but Dr. Stein's treatment of Dandridge ended when Dr. Stein's medical license was suspended on October 21, 2002.

Dr. Joel J. Silverman performed a psychiatric evaluation of Dandridge pursuant to Supreme Court Rule 4:10, and portions of his deposition were read at trial. Dr. Silverman testified that Dandridge suffered from chronic depression, and that his headaches were not caused by the second accident but by stress, depression, or a biological predisposition to headache. Dr. Silverman concluded that the intensification of Dandridge's headaches was not the result of the second accident.

In this appeal, Dandridge assigns error to three of the trial court's evidentiary rulings. Dandridge asserts first

3

that the trial court erred in sustaining Marshall's objection to Dandridge's testimony regarding his treatment by Dr. Martin Stein.  Dandridge also assigns error to the trial court's rulings that permitted certain testimony by Dr. Silverman, specifically, that Dandridge had admitted he hoped to meet financial obligations with proceeds of the lawsuit and that Dandridge had purchased an "assault weapon" rather than securing further medical treatment.  We consider these issues in order.

                              I.

     Dr. Stein treated Dandridge in 2002 following termination of Dr. Cifu's treatment.  Dandridge's treatment consisted primarily of prescriptions for pain medications.  Dr. Stein's medical license was subsequently revoked.  On the day of trial, Marshall filed a motion in limine to preclude Dandridge from introducing any testimony regarding the treatment Dandridge received from Dr. Stein.  Marshall's objection to this testimony was that Dr. Stein was not going to testify at trial and that, under McMunn v. Tatum, 237 Va. 558, 569, 379 S.E.2d 908, 914 (1989), only Dr. Stein could testify whether the treatment Dandridge received was reasonable and related to the accident.

     Marshall correctly recites the principle that only a physician can testify as to the reasonableness of treatment

                              4

and its causal connection to an event. However, the testimony that Dandridge wished to present regarding Dr. Stein's treatment did not address those issues. As he argued at trial and reasserts here, Dandridge wanted to testify that when Dr. Cifu told Dandridge he could not provide any further helpful treatment and Dandridge should seek treatment with a psychiatrist or pain management specialist, Dandridge followed those instructions and secured treatment with Dr. Stein, a psychiatrist specializing in pain management. Such testimony bears not on the medical necessity of Dr. Stein's treatment but on Dandridge's heeding of Dr. Cifu's instructions.

Based on this record, we conclude that the trial court erred in sustaining Marshall's objection to Dandridge's testimony that Dandridge followed the advice of Dr. Cifu and secured pain management treatment by Dr. Stein. This testimony was relevant in a number of particulars. It showed that Dandridge followed the recommendation of Dr. Cifu, his treating physician, that Dandridge spent money on further treatment – in contradiction to Dr. Silverman's testimony – and it also supported Dandridge's claim of a permanent injury, because Dandridge continued to seek medical treatment even though his treatment with Dr. Cifu ended over a year before the litigation.

Our conclusion requires that we reverse the judgment of the trial court and remand the case for a new trial on damages. Because the other issues Dandridge raises in this appeal may arise on retrial, we will address them here.

II.

Dandridge complains that the trial court erroneously overruled his objection to the following exchange during Marshall's questioning of Dr. Silverman:

> Q. Now, Doctor, did you discuss at any point the motivation for this lawsuit or the basis for this lawsuit.
>
> . . .
>
> A. Mr. Dandridge volunteered that he had heavy financial obligations, and that he hoped that he could better meet some of those obligations as a result of the litigation.

Dr. Silverman's statement, according to Dandridge, improperly injects his financial standing into consideration of his damages. Washington-Virginia Ry. Co. v. Deahl, 126 Va. 141, 150, 100 S.E.2d 840, 843 (1919). Marshall counters that this statement is admissible as an admission that is probative on the issues of injuries and the extent of damages, citing Breeden v. Roberts, 258 Va. 411, 518 S.E.2d 834 (1999).

In Breeden, a personal injury action, the plaintiff denied making a statement to a third party "about how much money [he was] going to get out of th[e] lawsuit." Id. at

6

415, 518 S.E.2d at 837. Unlike Dandridge, the plaintiff in Breeden neither objected to the question nor sought to have the answer stricken. Id. Nevertheless, in considering whether the defendant could introduce further evidence to contradict the plaintiff's testimony, we observed that the plaintiff's statement regarding the money he would receive from the lawsuit "related to and tended to cast light upon the issue of his injuries and the extent of his damages." Id. at 416, 518 S.E.2d at 837. While this statement is dicta, we agree with Marshall that, like the statement in Breeden, Dandridge's statement here was relevant because it was not, as Dandridge argues, limited to his financial status but "cast light" on a matter contested at trial: Dandridge's credibility regarding the extent of his injuries. Id. Accordingly, the trial court did not err in admitting this statement into evidence.

### III.

Finally, Dandridge asserts that the trial court erred in allowing Dr. Silverman to testify that Dandridge used his money to purchase an "assault weapon" and ammunition rather than seeking further medical treatment. This testimony occurred by deposition and in the context of Dr. Silverman's explanation that impulsive behavior and irrational decisions

7

are relevant factors in the evaluation of a person who is depressed.

In determining whether evidence should be admitted, the trial court must apply a balancing test in assessing the probative value of the evidence and its prejudicial effect.  Brugh v. Jones, 265 Va. 136, 140, 574 S.E.2d 282, 284-85 (2003).  This determination rests within the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of discretion. Lombard v. Rohrbaugh, 262 Va. 484, 492, 551 S.E.2d 349, 353 (2001).

Dr. Silverman testified that irrational decisions including impulsive purchasing are relevant to the mental examination of a depressed person.  However, an expert need not identify every act that person performed to offer an opinion on the mental condition of the person under examination.  In this case, the prejudicial effect of identifying an assault weapon as one of Dandridge's impulse purchases substantially outweighs the probative value of identifying the object of an impulsive purchase. The mention of an assault weapon and ammunition distracts the jury from the matter at issue and prejudices Dandridge.  Accordingly, we conclude that the trial court committed error because it

abused its discretion in allowing Dr. Silverman to testify that Dandridge purchased an assault weapon.

Finally, we reject Marshall's suggestion that any error the trial court committed in the three evidentiary rulings at issue was harmless error. Well established principles require that error be presumed prejudicial unless the record clearly shows that the error could not have affected the result. Spence v. Miller, 197 Va. 477, 482, 90 S.E.2d 131, 135 (1955). "There is no presumption that error is harmless." Breeding v. Johnson, 208 Va. 652, 659, 159 S.E.2d 836, 842 (1968). Marshall bases his argument primarily on his theory that the jury returned a verdict of only $15,000 because it did not find Dandridge credible. Nothing in the record of this case clearly shows that Dandridge's credibility alone was the basis of the jury's verdict or that the errors of the trial court did not affect Dandridge's credibility.

For the reasons stated, we will reverse the judgment of the trial court and remand the case for a new trial consistent with this opinion on the question of damages.

Reversed and remanded.