Present:  All the Justices

DEREK LAMONT MCCLOUD

                                        OPINION BY
v.  Record No. 041200          JUSTICE LAWRENCE L. KOONTZ, JR.
                                      March 3, 2005

COMMONWEALTH OF VIRGINIA[*]

            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                    Rossie D. Alston, Jr., Judge

        Pursuant to Code § 37.1-70.6(A), the Commonwealth

petitioned the Circuit Court of Prince William County (trial

court) to civilly commit Derek Lamont McCloud, a prison inmate,

as a sexually violent predator.  Subsequently, a jury rendered a

unanimous verdict determining McCloud to be a sexually violent

predator as defined in Code § 37.1-70.1.  Following a

determination of McCloud's treatment needs and that alternatives

to involuntary confinement and treatment were unsuitable, the

trial court ordered that McCloud be committed to the custody of

the Department of Mental Health, Mental Retardation and

Substance Abuse Services for appropriate treatment and

confinement pursuant to Code § 37.1-70.9(C).

---

        [*] In the trial court this case was styled "Jerry W. Kilgore,
Attorney General of Virginia, ex rel. Commonwealth of Virginia
v. Derek Lamont McCloud."  We have amended the style of the case
to reflect that the Commonwealth is the direct party in
interest, not a relator.  See Townes v. Commonwealth, 269 Va.
___, ___ n.*, ___ S.E.2d ___, ___ n.* (2005) (today decided).

McCloud has appealed that judgment, asserting that the trial court erred in permitting the jury to consider evidence of his convictions for crimes other than sexually violent offenses defined in Code § 37.1-70.1, that the trial court erred in finding that there was no suitable less restrictive alternative to involuntary institutional confinement, and that the trial court erred in considering McCloud's failure to present an alternative treatment plan to justify his involuntary commitment. McCloud seeks a new trial as a result of these asserted errors. The Commonwealth, by assignments of cross-error, asserts that the trial court erred in refusing to admit evidence of all McCloud's institutional infractions and in qualifying and permitting McCloud's expert witness to testify.

BACKGROUND

Between late 1988 and early 1989, McCloud was convicted in the trial court of two counts of rape, one count of abduction, and one count of indecent liberties. For these felony offenses, McCloud received sentences totaling eighty-seven years' imprisonment with fifty-five years suspended. Because certain of McCloud's sentences were ordered to run concurrently, his total active time to serve following these convictions was seventeen years and six months.

On March 13, 2003, as required by Code § 37.1-70.4(C), the Director of the Virginia Department of Corrections notified the

Commitment Review Committee (CRC) that McCloud was scheduled to be released from prison on November 16, 2003, and had been identified through testing as being likely to commit sexually violent offenses in the future.  Dr. Daniel Sheneman, a forensic clinical psychiatrist and sexual offender treatment provider, conducted an examination of McCloud as required by Code § 37.1-70.5(B).  The CRC completed its assessment of McCloud for possible commitment and, on June 12, 2003, forwarded to the Attorney General a recommendation that McCloud be committed as a sexually violent predator.

The Attorney General, on behalf of the Commonwealth, filed a petition in the trial court for the civil commitment of McCloud as a sexually violent predator on September 9, 2003. Following the appointment of counsel, pursuant to Code § 37.1-70.2, McCloud filed a motion requesting that Dr. Jerome J. Miller be appointed as a mental health expert, pursuant to Code § 37.1-70.8, to assist McCloud on the matters relating to his mental health.  Dr. Miller is a licensed clinical social worker who holds a doctorate in social work "with a psychiatric emphasis."

On November 7, 2003, the trial court conducted a hearing as required by Code § 37.1-70.7 and determined that there was probable cause to believe that McCloud is a sexually violent predator.  During that hearing, the trial court also heard

argument on McCloud's motion for appointment of Dr. Miller as McCloud's mental health expert. The Commonwealth opposed this motion because Dr. Miller is not a licensed psychiatrist or a licensed clinical psychologist. The Commonwealth contended that, because Code § 37.1-70.5(B) requires a licensed psychiatrist or psychologist to conduct the CRC's evaluation of McCloud, any expert appointed to assist McCloud was subject to the same requirement. The trial court granted McCloud's motion for appointment of Dr. Miller, noting that the Commonwealth could challenge Dr. Miller's qualifications at trial. Pursuant to Code § 37.1-70.9(B), McCloud requested a trial by jury on the Commonwealth's petition for his civil commitment.

Prior to trial, McCloud filed a motion in limine seeking to prohibit the Commonwealth from introducing evidence of his criminal convictions for abduction and indecent liberties. McCloud contended that the Commonwealth should be limited to proving only convictions of predicate violent sexual offenses as defined by Code § 37.1-70.1. McCloud also sought to prohibit the Commonwealth from introducing evidence of institutional infractions committed while he was incarcerated.

On February 2, 2004, the trial court commenced a jury trial on the Commonwealth's petition.[1] Prior to seating the jury, the

---

[1] As discussed _infra_, pursuant to Code § 37.1-70.9(C), the jury's role was to determine whether McCloud met the definition

4

trial court heard argument on McCloud's motion in limine. The trial court ruled that the Commonwealth would be allowed to present evidence of the convictions for abduction and indecent liberties as well as evidence of those institutional infractions involving prohibited "sexual advances." The trial court prohibited the presentation of evidence of an infraction involving only an attempted sexual act or any nonsexual act. The trial court reasoned that the convictions for abduction and indecent liberties and the infractions involving prohibited sexual behavior were relevant because they tended to show McCloud's predatory nature.

In the status determination phase of the trial, the Commonwealth introduced certified copies of the orders reflecting McCloud's convictions and the sentences imposed for the rapes, abduction, and indecent liberties offenses. Dr. Sheneman testified, based upon a review of records maintained by the Department of Corrections regarding McCloud's personal and criminal background, a clinical interview with McCloud, and various diagnostic tests, that McCloud suffers from "antisocial

of a sexually violent predator under Code § 37.1-70.1. The nature of treatment McCloud would receive if the jury so found would be determined by the trial court. The parties accordingly agreed to bifurcate the presentation of the evidence. We will refer to the jury stage of the trial as the "status determination phase" and the subsequent proceedings before the trial court alone as the "treatment determination phase."

personality disorder." Dr. Sheneman also testified concerning McCloud's institutional infractions that involved prohibited sexual behavior. In addition, Cindy Collins, a criminal records manager with the Department of Corrections, testified, in accord with the trial court's prior ruling, that McCloud had incurred three disciplinary actions for prohibited sexual behavior while incarcerated, two for making "sexual advances towards others" and one for "indecent exposure."[2] McCloud did not introduce any evidence at this stage of the trial.

After hearing argument of counsel and being instructed by the trial court, the jurors were provided with an interrogatory verdict form directing them to determine whether McCloud was a sexually violent predator. During deliberations, the jury sent out four questions to the trial court, including one question concerning the "time frames/dates of the sexual institutional infractions committed by Mr. McCloud." The trial court answered this question by advising the jurors that they should rely on their collective memories as to what facts were presented

---

[2] Because the issues raised in this appeal relevant to this phase of the trial are limited to the effect of the trial court's ruling on McCloud's motion in limine and the limitation placed upon the Commonwealth's presentation of all of McCloud's institutional infractions, we need not relate in detail the entire testimony of Dr. Sheneman that supports the jury's determination that McCloud is a sexually violent predator. McCloud does not directly challenge the jury's determination and, accordingly, we do not address that issue in this appeal.

concerning the infractions. The jury returned its verdict finding that McCloud meets the definition of a sexually violent predator.

During the treatment determination phase, the Commonwealth recalled Dr. Sheneman who then testified that in his opinion "in-patient treatment would be more appropriate for" McCloud. Dr. Sheneman testified that he was "not familiar with what [form of out-patient treatment] is available" in Prince William County, but opined that regardless of the form of out-patient treatment, McCloud would be at "risk for non-compliance and inability to follow the program [and] that would not be an issue if he were an in-patient." Although no plan for treating McCloud by medication had yet been developed, Dr. Sheneman opined that "if that route were to be taken, [it should be] done on an in-patient basis so that they could accurately see what treatments were effective more consistently through observation." Dr. Sheneman further testified that he believed "McCloud presents a risk to public safety if he were to be released" immediately, but that if held for in-patient treatment, he might be ready for release to an out-patient program "[p]robably [within] a few months" if he "participated to the utmost" in the in-patient treatment.

On cross-examination, Dr. Sheneman conceded it was possible that with "enough structure in Mr. McCloud's life . . . out-

7

patient treatment [could be] successful." However, he reiterated that McCloud "would not be able to participate in as much treatment as he would have available to him on an in-patient basis."

Dr. Miller was called to testify for McCloud. Dr. Miller testified that after obtaining his doctorate in social work he worked in various professional, governmental, and academic settings. In 1979, Dr. Miller founded the National Center on Institutions and Alternatives, which is devoted to developing alternatives to in-patient treatment for institutionalized persons. In 1984, Dr. Miller founded the Augustus Institute, which provides clinical services for sex offenders. Dr. Miller testified that he serves on the board of the Institute for the Study, Prevention, and Treatment of Sexual Trauma at Johns Hopkins University. Dr. Miller is a licensed clinical social worker and is certified by Virginia as a sex offender treatment provider.

The Commonwealth renewed its objection to having Dr. Miller testify on the ground that he was not a licensed psychiatrist or licensed clinical psychologist. The trial court agreed that Dr. Miller could not testify concerning "any evaluations as to different psychosis . . . but I think he can testify with regards to socialization issues." Accordingly, the trial court

8

overruled the Commonwealth's objection and permitted Dr. Miller to testify.

Dr. Miller testified that he had interviewed McCloud and reviewed his mental health records. Dr. Miller opined that McCloud's violent tendencies were the result of his use of PCP and other psychedelic drugs. Dr. Miller further opined that McCloud's antisocial tendencies would decrease with age. Dr. Miller also testified that he believed that "sex offenders . . . do not recidivate at the rates commonly understood."

Dr. Miller maintained that McCloud "would do well in [out-patient] therapy" and "would be very treatable with a good community program." Dr. Miller further maintained that he would be willing to provide services for McCloud through the Augustus Institute or to refer him for treatment elsewhere.

McCloud's father, Fred W. McCloud, Jr., testified that he and his wife would be willing to provide McCloud with a place to live and transportation if he were permitted to receive treatment as an out-patient. McCloud's father stated that he was financially able to provide for such treatment for his son. He further testified that if McCloud failed in his treatment obligations, "[my] wife and I would get all over him about it and then if we saw that he continued to do something wrong it would be reported" to McCloud's probation officer or the trial court.

9

At the conclusion of the treatment determination phase, the trial court found that the Commonwealth had "investigated less restrictive alternatives to involuntary institutional confinement and treatment [and] that in the context of this case, these less[] restrictive alternatives to involuntary institutionalization are unsuitable at this time."  Accordingly, the trial court ruled that "the government met its burden of proof" and ordered that McCloud be placed in the custody of the Department of Mental Health, Mental Retardation and Substance Abuse Services for in-patient treatment as required by Code § 37.1-70.10.  On February 21, 2004, the trial court entered an order committing McCloud as a sexually violent predator.  This appeal followed.

DISCUSSION

This case, along with Townes v. Commonwealth, 269 Va. ___, ___ S.E.2d ___ (2005) (today decided) and Commonwealth v. Allen, 269 Va. ___, ___ S.E.2d ___ (2005) (today decided), presents the first opportunity for this Court to review the procedures required to be followed in order for the Commonwealth to have a person who has been convicted of a sexually violent offense declared to be a sexually violent predator and to have that person involuntarily committed to a secure mental health facility upon his release from prison.  The statutory scheme embodying those procedures is set out in Chapter 2, Article 1.1

10

of Title 37.1, commonly referred to as the Sexually Violent Predators Act (SVPA).  Code § 37.1-70.1 through Code § 37.1-70.19.  Of the three SVPA cases we decide today, we have selected this case to review in more detail the procedures of the SVPA as well as the standards to be applied in the trial court in considering whether to commit a person determined to be a sexually violent predator.

Code § 37.1-70.1 defines a "sexually violent predator" as "any person who (i) has been convicted of a sexually violent offense or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3 and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior which makes him likely to engage in sexually violent acts."[3]  The statute further defines a "sexually violent offense" as "a felony conviction under . . . §§ 18.2-61 [rape], 18.2-67.1 [forcible sodomy], or § 18.2-67.2 [object sexual penetration] or subdivision A 1 of § 18.2-67.3 [aggravated sexual battery]" or a conviction under the law of the Commonwealth for certain types of forcible sexual offenses committed prior to July 1, 1981.  A "mental abnormality" or "personality disorder" is defined for

---

[3] This case and those referenced above involve convicted persons (prisoners) rather than persons incompetent to stand trial (defendants).  See Code § 37.1-70.2.  For clarity, we will use the designation of "prisoner" hereafter in this opinion.

11

purposes of the SVPA as "a congenital or acquired condition that affects a person's emotional or volitional capacity and renders the person so likely to commit sexually violent offenses that he constitutes a menace to the health and safety of others."

The SVPA involves the potential involuntary loss of a prisoner's liberty.  Although a proceeding under the SVPA is a civil one, a prisoner subject to the SVPA is afforded certain rights generally applicable to criminal proceedings.  These include the right to receive adequate notice of the proceeding; to be represented by counsel; to remain silent or to testify; to be present during the hearing or trial; to present evidence and to cross-examine witnesses; and, to view and copy all petitions and reports in the court file.  Code § 37.1-70.2.  The prisoner, however, is not permitted to challenge the validity of his prior criminal sentences or institutional convictions.  Id.  In addition, the prisoner has "the right to employ experts at his own expense to perform examinations and testify on his behalf" or to request that the trial court appoint such experts for him as are "deem[ed] necessary" by the trial court.[4]  Code § 37.1-70.8(A).

_____

[4] In 2004, Code § 37.1-70.8(A) was amended to require that any expert appointed to assist a respondent "shall have the qualifications required by subsection B of § 37.1-70.5."  Acts 2004, ch. 764.  Code § 37.1-70.5(B) sets the qualifications for the professional designated by the CRC to perform the mental health examination of a prisoner identified as being subject to

12

The prisoner may request a trial by jury, as may the Commonwealth. Code § 37.1-70.9(B). As in this case, when a jury trial is conducted, the jury's role is to determine whether the prisoner is a sexually violent predator as statutorily defined. The ultimate determination whether a prisoner determined to be a sexually violent predator will be subject to involuntary confinement or some less restrictive form of treatment remains vested in the trial court. Code § 37.1-70.9(C).

The process for determining whether a prisoner will be committed under the SVPA begins when the Director of the Department of Corrections identifies a prisoner, who is serving a sentence for a sexually violent offense and is scheduled for release within ten months, as being likely to commit future acts of sexual violence based upon initial screening conducted by the Department.[5] Any such prisoner must be referred to the CRC for further screening and assessment. Code § 37.1-70.4(C).

---

the SVPA and provides that the examination must be conducted by "a licensed psychiatrist or a licensed clinical psychologist, designated by the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services." A further provision of the amended version of Code § 37.1-70.8(A) provides that a privately employed expert need only be "a licensed psychiatrist or a licensed clinical psychologist."

[5] If a defendant charged with a sexually violent offense is adjudged to be unrestorably incompetent by the Director of the Department of Mental Health, Mental Retardation and Substance Abuse Services and is unable to stand trial for that reason, a

13

The CRC's assessment of a prisoner referred to it by the Director "shall include a mental health examination, including a personal interview, of the prisoner by a licensed psychiatrist or a licensed clinical psychologist, designated by the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services, who is skilled in the diagnosis and treatment of mental abnormalities and disorders associated with violent sex offenders, and who is not a member of the CRC."  Code § 37.1-70.5(B).  In addition to the report prepared by the professional performing the mental health examination of the prisoner, the CRC will include in its assessment the prisoner's score on the screening test used by the Department of Corrections or a similar test and review "(i) the prisoner's institutional history and treatment record, if any; (ii) the prisoner's criminal background; and (iii) any

recommendation is to be made to the trial court having jurisdiction over the defendant as to whether he should be committed pursuant to the SVPA.  Code § 19.2-169.3(A).  If the trial court determines that the defendant will not stand trial because he is unrestorably incompetent, the recommendation that he be committed as a sexually violent predator is referred directly to the Attorney General.  Code § 19.2-169.3(D).  If the Attorney General declines to seek commitment of the defendant as a sexually violent predator, the case will be remanded to the trial court for further proceedings consistent with the treatment of unrestorably incompetent criminal defendants.  Id. The procedures for commitment as a sexually violent predator of an unrestorably incompetent defendant are comparable to those applicable to a prisoner incarcerated for a sexually violent offense.

other factor which is relevant to the determination of whether such prisoner is a sexually violent predator." Id.

Upon completion of the assessment, the CRC is required to forward the report of the professional performing the mental health examination of the prisoner and all relevant records relating to the assessment to the Attorney General. The CRC must also make a recommendation that the "prisoner (i) be committed as a sexually violent predator pursuant to this article; (ii) not be committed, but be placed in a conditional release program as a less restrictive alternative; or (iii) not be committed because he does not meet the definition of a sexually violent predator." Code § 37.1-70.5(C). In order to recommend that a prisoner be placed in a conditional release program, the CRC must "find[] that (i) such prisoner does not need inpatient hospitalization, but needs outpatient treatment and monitoring to prevent his condition from deteriorating to a degree that he would need inpatient hospitalization; (ii) appropriate outpatient supervision and treatment are reasonably available; (iii) there is significant reason to believe that the prisoner, if conditionally released, would comply with the conditions specified; and (iv) conditional release will not present an undue risk to public safety." Code § 37.1-70.5(D).

Upon receipt of the recommendation and supporting documentation from the CRC, the Attorney General must determine

within 90 days whether to file a petition seeking the civil commitment of the prisoner as a sexually violent predator upon his release from prison. Code § 37.1-70.6(A). The petition is to be "filed in the circuit court wherein the prisoner was last convicted of a sexually violent offense." Id. A copy of the petition is to be served on "the warden or superintendent of the correctional facility wherein the person is then confined" and delivered to the prisoner. Code § 37.1-70.7(A). Additionally, the prisoner is to be given "a written explanation of the sexually violent predator involuntary commitment process and the statutory protections associated with the process." Id.

Upon the filing of the petition by the Attorney General, the circuit court must enter an order directing that the prisoner will "remain in the secure custody of the Department of Corrections" until a final order is entered on the petition, even if such time extends beyond the prisoner's scheduled date of release from prison. Code § 37.1-70.7(A). The circuit court then must conduct a probable cause hearing within 60 days to determine whether there is a sufficient basis "to believe that the person named in the petition is a sexually violent predator." Id. Prior to that hearing, the circuit court must assure that the prisoner has the opportunity to retain counsel or, if he has not had such opportunity or cannot afford to retain counsel, the court will appoint counsel for him. Code

16

§ 37.1-70.7(B). If the circuit court finds that there is probable cause to believe that the prisoner is a sexually violent predator, it must conduct a trial on the Commonwealth's petition within 90 days of that determination. Code § 37.1-70.9(A).

At trial, the Commonwealth is required by Code § 37.1-70.9(C) to prove by "clear and convincing evidence" that the prisoner is a sexually violent predator as defined by Code § 37.1-70.1. Upon such a finding by the circuit court, or by the jury if a jury trial was conducted, "the court shall then determine the nature of treatment the person is to receive." Id. Before ordering that the prisoner be committed to a secure mental health facility, the circuit court must find "that alternatives to involuntary confinement and treatment have been investigated and deemed unsuitable and there is no less restrictive alternative to institutional confinement and treatment." Id. If the circuit court finds that involuntary confinement is not required, the case is continued in order for the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services to provide a report "suggesting possible alternatives to full commitment."[6] Id.

_____

[6] The SVPA contains further provisions for the placement of prisoners found to be sexually violent predators in a secure mental health facility, the procedures for review of the continuation of their confinement and for prisoners so confined

17

Applying this statutory scheme, we turn to our consideration of the issues raised by McCloud and the Commonwealth in this appeal. We will consider assignments of error and cross-error in the order in which the issues to which they relate arose in the trial court, beginning with the pre-trial rulings on the admissibility of evidence in the status determination phase to prove that McCloud is a sexually violent predator. Specifically, McCloud has assigned error to the trial court's ruling permitting the Commonwealth to adduce evidence of his convictions for abduction and indecent liberties because those offenses are not defined by Code § 37.1-70.1 as sexually violent offenses. The Commonwealth has assigned cross-error to the trial court's ruling to limit its introduction of certain evidence concerning McCloud's institutional infractions.

To support his first assertion of error, McCloud relies on the principle applicable to criminal trials that generally bars the Commonwealth from introducing evidence of other crimes or bad acts by a defendant to prove his guilt of the crime charged. See, e.g., Goins v. Commonwealth, 251 Va. 442, 462, 470 S.E.2d 114, 127 (1996); Kirkpatrick v. Commonwealth, 211 Va. 269, 272,

---

to petition for release, and penalties for escape from a secure mental health facility or violation of conditional release status. Because these provisions of the statutory scheme are not at issue in any of the cases presently under consideration by this Court, we need not describe those provisions in further detail.

176 S.E.2d 802, 805 (1970). McCloud further relies on the principle that " 'a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered . . . and such judgment of conviction or acquittal is not admissible in evidence.' " Godbolt v. Brawley, 250 Va. 467, 470, 463 S.E.2d 657, 659 (1995) (quoting Smith v. New Dixie Lines, Inc., 201 Va. 466, 472, 111 S.E.2d 434, 438 (1959)). McCloud's reliance on both of these principles is misplaced.

"Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001); see also Barkley v. Wallace, 267 Va. 369, 373, 595 S.E.2d 271, 273 (2004); Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 205, 585 S.E.2d 557, 566-67 (2003). In determining whether relevant evidence should be admitted, the trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence. Dandridge v. Marshall, 267 Va. 591, 596, 594 S.E.2d 578, 581 (2004); Brugh v. Jones, 265 Va. 136, 140, 574 S.E.2d 282, 284-85 (2003). The Commonwealth's burden in a proceeding under the SVPA is to prove by clear and convincing evidence both that the prisoner has been convicted of a sexually violent offense and because of a mental abnormality or personality disorder, the prisoner finds it

19

difficult to control his predatory behavior which makes the prisoner likely to engage in sexually violent acts in the future. Thus, evidence that tends to prove or is otherwise pertinent to either of those elements is relevant. Beyond question, evidence that McCloud had been convicted of an abduction related to a rape and evidence that he had been convicted for indecent liberties were pertinent to the question whether McCloud was likely to commit sexually violent acts in the future and, thus, were relevant.

The determination to admit such relevant evidence rested within the trial court's sound discretion and will only be disturbed on appeal upon a showing of an abuse of that discretion. Dandridge, 267 Va. at 596, 594 S.E.2d at 581; Lombard v. Rohrbaugh, 262 Va. 484, 492, 551 S.E.2d 349, 353 (2001). McCloud's conviction for abduction was inextricably connected with his conviction for the rape; both offenses occurred during the same series of events. Thus, the abduction is highly probative of predatory behavior. McCloud's conviction for indecent liberties occurred in relative proximity to his other convictions for sexual offenses, and is highly probative of his inability to control his impulsive sexual behavior. Any prejudicial effect this evidence might have had on the minds of the jurors was far outweighed by its probative value on the issue to be determined by the jury. Accordingly, we hold that

the trial court did not err in permitting admission of this evidence.[7]

In its assignment of cross-error, the Commonwealth contends that the trial court erred in limiting the introduction of evidence concerning McCloud's misbehavior while in prison to instances of infractions for prohibited sexual behavior. The Commonwealth contends that because a prisoner subject to the SVPA will have been incarcerated for many years prior to the time of the trial on the petition seeking his commitment, evidence of his behavior while incarcerated is the best evidence available to the Commonwealth to establish whether he has the ability to control his predatory impulses or is likely to re-offend. This is particularly true, the Commonwealth contends, because a person unable to control his behavior within the rigid structure of a prison, where presumably misbehavior is immediately discovered and punished, will be even less likely to be able to control his behavior once he is returned to free

---

[7] There is simply no merit to McCloud's reliance upon Godbolt. Its discussion and holding with respect to admissibility of prior criminal proceedings related to the collateral estoppel use in a later civil suit of facts allegedly determined in a prior criminal proceeding. See 250 Va. at 470, 463 S.E.2d at 659 (discussing the mutuality requirement and same object/same results tests). That decision also turned upon the rules relating to the use of a criminal conviction where a convicted defendant seeks to recover as a plaintiff in a civil suit for the very wrong he perpetrated. Id. at 471, 463 S.E.2d at 660.

21

society. Thus, the Commonwealth asserts that in addition to evidence of McCloud's sexual misbehavior, the trial court should also have permitted introduction of all McCloud's infractions, or at least permitted it to present evidence of the number of infractions he committed.

The record in this case reflects that McCloud incurred eighty-two institutional infractions over a period of years. Those infractions, other than those the trial court admitted into evidence, ranged in degree of apparent severity from "disregarding a direct order" to "assault" and "possession of a weapon." The record contains no details regarding the circumstances involved in these infractions. The trial court in limiting the Commonwealth's evidence to infractions for prohibited sexual behavior reasoned that the other infractions would not be probative of McCloud's predatory behavior and that simply permitting the Commonwealth's witness to recite the number of infractions without giving the specifics of the circumstances involved "might mislead the jury." We are of opinion that the trial court did not abuse its discretion in limiting the Commonwealth's evidence in this manner. It simply cannot be reasonably concluded that a prisoner who violates an institutional rule while incarcerated such as disregarding a direct order or "being in an unauthorized area" is likely to commit a sexually violent offense or other criminal offense upon

22

his release from prison.  Science has yet to reach that degree of accuracy in prediction and in its absence such evidence, if not confusing to a jury, would only be prejudicial in its presentation to the jury.

We now consider the Commonwealth's assignment of cross-error concerning the qualification of Dr. Miller as an expert witness for McCloud during the treatment determination phase of the trial.  Initially, we note that the Commonwealth's concerns underlying this assignment of error have been addressed by the recent amendment to Code § 37.1-70.5(A) which, as we have noted above, now provides that any expert appointed to assist a prisoner subject to a SVPA petition "shall have the qualifications required by subsection B of § 37.1-70.5." Because the Commonwealth prevailed in the trial court and in light of our ultimate resolution of McCloud's appeal, the issue of Dr. Miller's qualification as an expert by the trial court in this case is moot.  Accordingly, we will not address this issue further in this opinion.

We turn now to consider McCloud's remaining two assignments of error.  These relate to the trial court's finding that less restrictive alternatives to involuntary confinement were investigated and deemed unsuitable and whether the trial court improperly shifted the burden of showing that such alternatives were available to McCloud when, according to McCloud, it

23

implicitly based its decision to have him involuntary confined in part on his failure to present a specific plan for alternative treatment.

With respect to the first issue, McCloud essentially contends that the evidence introduced at the treatment determination phase of his trial does not support the trial court's finding that alternatives to involuntary confinement have been investigated and deemed unsuitable as required by Code § 37.1-70.9(C). To the extent that McCloud suggests that the language of this statute imposes in every case a requirement upon the Commonwealth to propose specific alternatives to commitment and then to show that they are unsuitable, we disagree. We have no reservation in concluding that the General Assembly did not intend to impose such a futile requirement upon the Commonwealth in cases where out-patient treatment of a sexually violent predator is not indicated by expert opinion.

Nevertheless, McCloud contends that Dr. Sheneman's testimony does not establish that out-patient treatment would be unsuitable, particularly when considered in conjunction with the testimony of Dr. Miller and McCloud's father. Again, we disagree. While the trial court was required to consider all the evidence in determining the nature of the treatment McCloud is to receive, under familiar principles the trial court was entitled to resolve any conflicts in that evidence and to accord

24

the testimony of each witness the weight it determined to be appropriate. Dr. Sheneman testified that out-patient treatment was not appropriate for McCloud. He indicated specific concerns with McCloud's ability to comply with rules and opined that McCloud's lack of insight into his personality disorder would interfere with his receiving treatment unless he was in a setting in which his behavior was controlled and monitored. This evidence was sufficient for the trial court to conclude that alternatives to involuntary confinement had been investigated by the Commonwealth and were found to be unsuitable.

With regard to the second issue, McCloud contends that when the trial court ruled in its summation that "no medication regimen, no specific diagnosis, no positive regimen for Mr. McCloud's acknowledged substance abuse issues, no behavioral adaptation or precise plan for Mr. McCloud's reintegration into the community can be presented at this time," it implicitly imposed upon McCloud the burden of providing such a plan to the trial court for consideration. McCloud contends that the trial court "us[ed] McCloud's failure to present a conditional release plan at the dispositional phase of the trial as a reason for imposing institutional confinement."

McCloud is correct that the burden of proving that there is no suitable less restrictive alternative to involuntary

25

confinement rests with the Commonwealth, and that burden cannot be shifted to the prisoner. However, when, as here, the Commonwealth has adduced evidence sufficient to satisfy the trial court that involuntary confinement is necessary and, thus, less restrictive alternatives are unsuitable, the prisoner then has the burden of going forward with his case if he is to rebut the Commonwealth's evidence. See Shope v. Commonwealth, 228 Va. 203, 205, 321 S.E.2d 282, 284 (1984).

We find nothing in the trial court's statement referenced by McCloud, or at any other point in the record, to support the contention that the trial court either required McCloud to produce a specific conditional release plan or that the trial court's decision to order McCloud to be involuntarily confined was based on the failure of McCloud to present such a plan. To the contrary, the statement cited by McCloud clearly indicates the trial court's finding that it agreed with the Commonwealth that no such plan for conditional release could be developed at that time because involuntary confinement was the only suitable form of treatment for McCloud. Accordingly, we hold that the trial court did not improperly shift to McCloud the burden of proving that there was a suitable alternative to involuntary confinement.

CONCLUSION

26

For the reasons stated with regard to each of McCloud's assignments of error and the Commonwealth's assignments of cross-error, we hold that there is no error in the judgment of the trial court that McCloud is a sexually violent predator requiring treatment through involuntary confinement in a secure mental health facility. Accordingly, the judgment of the trial court will be affirmed.

<u>Affirmed</u>.