COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia

UNPUBLISHED

DWAYNE ANTHONY HAIRSTON, S/K/A
 DWYNE ANTHONY HAIRSTON

v.     Record No. 0282-17-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN
APRIL 10, 2018

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

> Mark T. Stewart (Law Office of Mark T. Stewart, on brief), for
> appellant.
>
> Victoria Johnson, Assistant Attorney General (Mark R. Herring,
> Attorney General, on brief), for appellee.

Following a jury trial, Dwayne Anthony Hairston (appellant) was convicted in the Circuit

Court of Campbell County (trial court) for one count of forgery and one count of uttering a

forged check, both in violation of Code § 18.2-172.  On appeal, he contends the trial court

abused its discretion "where the court permitted the Commonwealth to introduce in its case in

chief evidence tending to show [that appellant] committed other crimes at other times in other

jurisdictions, including videotaped evidence, regarding checks drawn on Integrated Technology

Group's account for the purpose of showing [that appellant] forged and uttered a check drawn on

the Keller Williams account as charged."  For the reasons that follow, we affirm appellant's

convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence established that on July 16, 2015, Amanda Robertson was working at SunTrust Bank in Campbell County. Robertson testified that appellant, using his own identification, presented a check to be cashed. The check, dated July 14, 2015, was made payable to appellant in the amount of $1,843.38. It was drawn on an account owned by a realty company doing business as Keller Williams, and the name on the signature line was Stacy Powell.[1] The signature stood out to Robertson, so she contacted Keller Williams and was advised not to cash the check. Robertson copied appellant's identification and informed appellant that she was not able to cash the check. Appellant left the bank without further comment.

Deputy Andrew O'Connor with the Bedford County Sheriff's Office was informed of the attempt to cash the Keller Williams check. While investigating this check, O'Connor was informed that another company, Integrated Technology Group (ITG), which was located in the same business park as Keller Williams, had also reported issues regarding five checks. Upon investigating these additional checks, O'Connor learned that the checks from both ITG and Keller Williams were all made payable to appellant and were all dated July 14, 2015. He also learned that the ITG checks were cashed at five different Bank of the James branch locations

_____

[1] Stacy Powell, a Keller Williams employee with check-signing authority, testified that the signature on the check was not actually hers. She further testified that she was out-of-state on the date specified on the check and that she did not recall doing business with or having reason to pay appellant.

within a ninety-minute time span the same day that appellant presented the Keller Williams check at SunTrust.

Based on this information, O'Connor interviewed appellant at the Bedford County Sheriff's Office regarding the checks. Prior to trial for the current charges stemming from the Keller Williams check, the Commonwealth filed a motion *in limine* seeking to introduce the recorded interview through the testimony of O'Connor. The Commonwealth asserted that the video would show appellant admitting to cashing four of the ITG checks at four different banks prior to attempting to cash the Keller Williams check at SunTrust, as well as cashing the fifth ITG check at another bank immediately thereafter. At a pretrial hearing, the Commonwealth argued that it should be permitted to introduce this evidence in its case in chief because it was relevant to prove appellant's knowledge that the check was forged and his intent to defraud. The trial court stated that it would not rule on the evidence until it was in front of the court to review.

The day of the trial, prior to opening statements and outside the presence of the jury, the Commonwealth again stated its intention to examine O'Connor and to play the recorded interview. Appellant objected to the introduction of this evidence, arguing that information about the ITG checks was highly prejudicial. After hearing O'Connor's proffered testimony and viewing the video, the trial court overruled the objection, finding "a clear nexus on the same day and the same arrangements with the people involved." The court stated that the recorded statement had significant probative value that outweighed any potential prejudice, and it ruled that portions of the interview could be played for the jury. During the Commonwealth's case in chief, O'Connor then testified that the five ITG checks made out to appellant were cashed at the five different Bank of the James branches, and the interview was played for the jury.

During his testimony in his defense, appellant claimed that, instead of attempting to cash the check at SunTrust, he approached Robertson to find out if the check was "okay." He testified

that his employer gave the Keller Williams check and the ITG checks to an individual named A.T., who picked up appellant and drove him to each bank to cash the checks. Once the checks were cashed, appellant gave the money to A.T and received a cut of each check. Appellant testified that he thought the checks were for replacing his employer's stolen equipment. Appellant confirmed that he cashed the four ITG checks at four different banks before attempting to cash the Keller Williams check at SunTrust, as well as a fifth ITG check immediately after. While testifying, he ultimately admitted that he pled guilty to charges of uttering a forged instrument and obtaining money by false pretenses in relation to the ITG checks.

## II. ANALYSIS

Appellant argues that the trial court erred in admitting evidence of the other check crimes and that their probative value did not outweigh the prejudicial impact against him. He contends that the examination of O'Connor with regard to the ITG checks from the separate investigation created potential confusion for the jury, as well as improperly suggested a criminal predisposition that implied it was more likely that he committed the charged crimes. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "Generally, proof tending to show an accused committed other crimes at other times is incompetent and inadmissible for the purpose of showing commission of the particular crime charged." Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380 (1988) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)); Va. R. Evid. 2:404(b). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." Sutphin v. Commonwealth, 1 Va. App. 241, 245,

337 S.E.2d 897, 899 (1985) (citing Fleenor v. Commonwealth, 200 Va. 270, 274-75, 105 S.E.2d 160, 163 (1958)).

However, "such evidence is admissible 'if it tends to prove any relevant element of the offense charged' or if 'the evidence is connected with or leads up to the offense for which the accused is on trial.'" Woodfin, 236 Va. at 95, 372 S.E.2d at 380-81 (quoting Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805). In those circumstances, other crimes evidence can be relevant

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

Sutphin, 1 Va. App. at 245-46, 337 S.E.2d at 899. In other words, "the rule excludes such evidence *only* where the *sole purpose* in introducing the evidence is to show a pre-disposition on the part of the accused to commit crime or that type of crime." Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 8-3[a], at 430 (7th ed. 2012).

In the instant case, the Commonwealth advanced multiple grounds as to why O'Connor's testimony and appellant's recorded interview fell under permissible exceptions to the general rule prohibiting evidence of prior bad acts. Initially, the Commonwealth argued that it proved relevant elements of the charged offenses. Under Code § 18.2-172, an element of both forgery and uttering is "knowing [the writing] to be forged," while an additional element of forgery is the "intent to defraud." Another basis for admission advanced by the Commonwealth, and seemingly the rationale favored by the trial court, was that the evidence showed a common scheme, design, or plan.

"[E]vidence of similar acts is admissible to show a common scheme, design, or plan where there is such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." McWhorter v. Commonwealth, 191 Va. 857, 870-71, 63 S.E.2d 20, 26 (1951) (citations omitted). This is also true where the additional individual manifestations are interwoven with the instant charged offense. "When the course of criminal conduct is continuous and interwoven, 'the fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses.'" Scates v. Commonwealth, 262 Va. 757, 762-63, 553 S.E.2d 756, 759 (2001) (quoting Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984)).

O'Connor's testimony and the recorded interview established that the incidents where appellant cashed the ITG checks and attempted to cash the Keller Williams check all occurred within approximately ninety minutes and within the same geographical area. The procedure for each incident was also identical: appellant was given a check made payable to him, he presented the check for payment using his own identification, and he returned the received money to A.T., who gave appellant a cut of the proceeds.

The pattern established by O'Connor's testimony and the interview tended to show that appellant was aware that the checks he was cashing were forged. Appellant received a single ITG check to cash at each of the four different banks over the course of the morning before he attempted to cash the Keller Williams check at SunTrust. Even after SunTrust declined the Keller Williams check, appellant continued the pattern by cashing another ITG check at another bank immediately thereafter. The evidence, though circumstantial, gave rise to the inference that appellant knew he was engaged in culpable behavior and was consciously trying to minimize the

likelihood of raising suspicion by spreading the checks across individual transactions at separate establishments. This inference provided the jury with relevant context as to appellant's continued course of conduct throughout the morning.

Moreover, the concurrence of common features and the interwoven timing with the ITG checks created a pattern of behavior that provided additional context for the jury as to appellant's intent. Not only did each incident occur in an identical manner, but appellant cashed ITG checks both immediately before and immediately after his attempt to cash the Keller Williams check. Even though the Keller Williams check was from a different company, appellant presented the Keller Williams check in the middle of the ninety-minute time span where he was cashing the ITG checks. From this timeframe, the jury could conclude that appellant similarly intended to cash the Keller Williams check despite his testimony that he simply asked if the check was "okay." This is further supported by Robertson's testimony that appellant presented the check to her along with his identification.

The disputed evidence provided relevant insight into essential elements of the charged crimes by providing the jury with material, connected facts from which it could discern not only appellant's knowledge that the checks were forged and his intent to defraud, but also that the attempt to cash the Keller Williams check followed a common design or plan as seen through the cashing of the ITG checks. As such, the trial court did not abuse its discretion in permitting the Commonwealth to present the evidence to the jury.

Appellant contends, however, that allowing the Commonwealth to introduce this evidence unfairly prejudiced him because its prejudicial value outweighed its probative value. Even if admissible, "evidence of other crimes is permitted only when 'the legitimate probative value outweighs the incidental prejudice to the accused.'" Woodfin, 236 Va. at 95, 372 S.E.2d at 381 (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)). "[T]he

trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence." McCloud v. Commonwealth, 269 Va. 242, 257, 609 S.E.2d 16, 24 (2005) (citing Dandridge v. Marshall, 267 Va. 591, 596, 594 S.E.2d 578, 581 (2004)); see also Va. R. Evid. 2:403.

Because "all probative . . . evidence generally has a prejudicial effect to the opposing party," Lee v. Spoden, 290 Va. 235, 251, 776 S.E.2d 798, 806 (2015) (citing Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004)), "the relevant question is 'whether the probative value of the evidence is substantially outweighed by its unfair or unduly prejudicial effects,'" Commonwealth v. Proffitt, 292 Va. 626, 636, 792 S.E.2d 3, 7 (2016) (quoting Lee, 290 Va. at 252, 776 S.E.2d at 807). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." Id. (citing Lee, 290 Va. at 251, 776 S.E.2d at 807). As with admissibility, "the responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." Id. at 635, 792 S.E.2d at 7 (quoting Ortiz v. Commonwealth, 276 Va. 705, 715, 667 S.E.2d 751, 757-58 (2008)).

First, appellant argues that the Commonwealth's questions to O'Connor regarding the different payment amounts of the ITG checks tended to confuse the jury as to the actual check that was the subject of his current charges. The specific amount of the check, however, was neither material nor necessary to establish either offense of forgery or uttering. As such, there is no indication that such confusion occurred or affected the jury's decision.

Appellant also argues that the evidence improperly suggested that appellant had "a criminal bent" and was therefore more likely to have committed the current offenses. When taking up the matter outside the presence of the jury before trial, the court recognized the

potential for the evidence to have a prejudicial impact. In allowing the Commonwealth to introduce O'Connor's testimony about the ITG checks, the trial court expressly stated that O'Connor was not permitted to testify in front of the jury that the ITG checks were stolen and that he was only to state that he became aware of issues with the checks. The court expressly found, however, that the "substantial" probative value of the evidence was not outweighed by the potential prejudice.

Thus, it is clear that the trial court assessed the probative value in light of the possible prejudicial effect and took precautions in an effort to minimize any improper impact the evidence might have. Appellant contends that these efforts were insufficient without a limiting instruction to the jury as to improper inferences that should not be drawn from the evidence, but appellant did not request such an instruction.[2] Because the trial court reviewed the evidence prior to trial and took precautionary measures before its introduction to the jury, we cannot say that the trial court abused its discretion in allowing the evidence to be presented. Moreover, any prejudicial effect was further mitigated by appellant's own voluntary admission in his testimony that he pled guilty to check-related offenses stemming from the ITG checks. For these reasons, the prejudicial impact of the disputed evidence did not outweigh the probative value.

Nonetheless, the evidence at trial was such that the jury could have rendered the same verdict with or without the disputed evidence. Robertson unequivocally identified appellant as the person who came into the bank and presented the check for payment, using his own identification. Robertson noticed and confirmed an irregularity with the signature on the check. When she informed him that she could not cash the check, appellant did not inquire as to why it could not be cashed or what the issue was, he simply left the bank. Stacy Powell testified that

---

[2] Appellant acknowledges that he did not request a limiting instruction, therefore we do not address the issue on appeal. See Rule 5A:18.

she did not sign the check and that she did not know appellant or know of any reason why appellant would be entitled to payment from Keller Williams.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Flanagan v. Commonwealth, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011) (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998)). Even though appellant testified that he did not attempt to cash the check but instead asked if it was "okay," the jury was entitled to credit or discredit his testimony in light of the evidence presented. The jury also was not required to accept appellant's explanation that he was just trying to cash the check for his employer to replace the stolen equipment. The weight to be placed on the remaining evidence, including O'Connor's testimony and the recorded interview, was for the jury to determine.

### III. CONCLUSION

Because the evidence provided relevant, material insight into elements of the charged offenses, as well as established a common scheme, design, or plan shared with the instant offenses, it was admissible as an exception to the prohibition against admission of other crimes evidence. Furthermore, because it is evident that the trial court undertook a review to balance the probative value against the prejudicial effect, the trial court did not abuse its discretion in allowing the evidence to be introduced.

Affirmed.